**No. _____**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————————————

IN RE OSCAR SILVA PEREZ, NATALIE TAYLOR, JUSTIN DOE, SALVADOR DOE, CINDY MADUENA, JESSIKA OCAMPO HERNANDEZ, RICARDO OCAMPO HERNANDEZ, GENARO PALOMINO, FODAY TURAY, JAXHIEL TURAY, CARMEN ZAYAS AND COALITION FOR HUMANE IMMIGRANT RIGHTS

————————————

Original Proceeding from the United States District Court
for the Eastern District of Texas, Tyler Division
Case No. 6:24-cv-0306

————————————

## PETITION FOR WRIT OF MANDAMUS

————————————

*Esther H. Sung, Karen C. Tumlin, Hillary Li, Laura Flores-Perilla, Brandon Galli-Graves*
*Justice Action Center*
*P.O. Box 27280*
*Los Angeles, CA 90027*
*(323) 450-7272*

*Paige Austin, Harold A. Solis*
*Make the Road New York*
*301 Grove St.*
*Brooklyn, NY 11237*
*(718) 418-7690*

*Counsel for Petitioners*

# LIST OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Respondents: | Respondent's Counsel: |
|---|---|
| Honorable John Campbell Barker, U.S. District Court for the Eastern District of Texas, Tyler Division | |
| State of Texas<br>    State Respondent | Lanora Pettit<br>Ryan Walters<br>William Cole<br>Garrett Greene<br>Office of the Texas Attorney General<br>Austin, TX |
| State of Alabama<br>    State Respondent | Alan Hurst<br>Idaho Office of the Attorney General Boise, ID |
| State of Arkansas<br>    State Respondent | Alan Hurst<br>Idaho Office of the Attorney General<br>Boise, ID |
| State of Florida<br>    State Respondent | Alan Hurst<br>Idaho Office of the Attorney General<br>Boise, ID |
| State of Georgia<br>    State Respondent | Stephen Petrany<br>Georgia Department of Law<br>Atlanta, GA |
| State of Idaho | Alan Hurst |

| | |
|---|---|
| State Respondent | Michael Zarian<br>Idaho Office of the Attorney General<br>Boise, ID |
| State of Iowa<br>    State Respondent | Eric Wessan<br>Iowa Department of Justice<br>Des Moines, IA<br><br>Alan Hurst<br>Idaho Office of the Attorney General<br>Boise, ID |
| State of Kansas<br>    State Respondent | Alan Hurst<br>Idaho Office of the Attorney General<br>Boise, ID |
| State of Louisiana<br>    State Respondent | Alan Hurst<br>Idaho Office of the Attorney General<br>Boise, ID |
| State of Missouri<br>    State Respondent | Alan Hurst<br>Idaho Office of the Attorney General<br>Boise, ID |
| State of North Dakota<br>    State Respondent | Philip Axt<br>North Dakota Office of the Attorney General<br>Bismarck, ND<br><br>Alan Hurst<br>Idaho Office of the Attorney General<br>Boise, ID |
| State of Ohio<br>    State Respondent | Thomas Gaiser<br>Office of the Attorney General<br>Columbus, OH |

| | |
|---|---|
| State of South Carolina<br>    State Respondent | Alan Hurst<br>Idaho Office of the Attorney General<br>Boise, ID |
| State of South Dakota<br>    State Respondent | Alan Hurst<br>Idaho Office of the Attorney General<br>Boise, ID |
| State of Tennessee<br>    State Respondent | Alan Hurst<br>Idaho Office of the Attorney General<br>Boise, ID |
| State of Wyoming<br>    State Respondent | Alan Hurst<br>Idaho Office of the Attorney General<br>Boise, ID |
| United States Department of Homeland Security<br>Alejandro Mayorkas<br>Ur Mendoza Jaddou<br>Troy Miller<br>Patrick J. Lechleiter<br>Office of Management and Budget<br>Shalanda Young<br>    Federal Respondent | Erez Reuveni<br>Office of Immigration Litigation, Department of Justice<br>Washington, DC |
| Oscar Silva Perez<br>Natalie Taylor<br>Justin Doe<br>Salvador Doe<br>Cindy Maduena<br>Jessika Ocampo Hernandez<br>Ricardo Ocampo Hernandez<br>Genaro Palomino<br>Foday Turay<br>Jaxhiel Turay<br>Carmen Zayas | Esther H. Sung<br>Karen C. Tumlin<br>Hillary Li<br>Laura Flores-Perilla<br>Brandon Galli-Graves<br>Justice Action Center<br>Los Angeles, CA<br><br>Paige Austin<br>Harold A. Solis<br>Make the Road New York<br>Brooklyn, NY |

| Coalition for Humane Immigrant Rights<br>　　　Petitioners | |
|---|---|
| **Other Interested Parties**<br>Approximately 500,000 noncitizen spouses and 50,000 noncitizen stepchildren of U.S. citizens may meet the requirements to request parole in place under this process. | |

# TABLE OF CONTENTS

LIST OF INTERESTED PERSONS ........................................................ii

TABLE OF CONTENTS ..................................................................vi

TABLE OF AUTHORITIES..............................................................vii

INTRODUCTION............................................................................ 1

STATEMENT OF RELIEF SOUGHT ................................................ 4

ISSUE PRESENTED ......................................................................... 5

FACTUAL BACKGROUND............................................................... 5

REASONS TO GRANT THE WRIT.................................................. 11

    1.   The district court violated its non-discretionary duty to examine its jurisdiction. ..................................................................... 18

    2.   The district court violated its non-discretionary duty to comply with the Federal Rules of Civil Procedure and federal Supreme Court precedent. .................................................................................. 22

    3.   The district court's actions also amount to a clear abuse of discretion. .................................................................................. 23

CONCLUSION ............................................................................... 37

CERTIFICATE OF COMPLIANCE...................................................... 39

CERTIFICATE OF SERVICE................................................................ 40

# TABLE OF AUTHORITIES

## Cases

*All. for Hippocratic Med. v. Food & Drug Admin.*, No. 23-10362, 2023 WL 2913725 (5th Cir. Apr. 12, 2023) ..................................................24

*Am. Trucking Ass'ns, Inc. v. I.C.C.*, 669 F.2d 957 (5th Cir. 1982) .........13

*Arizona v. Garland*, No. 6:22-cv-01130, 2024 WL 165417 (W.D. La. Apr. 16, 2024) ...............................................................................................20

*Barber v. Bryant,* 860 F.3d 345 (5th Cir. 2017) ...........................21

*Castillo v. Cameron Cty.*, 238 F.3d 339 (5th Cir. 2001).........................14

*Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367 (2004) ....................12, 31

*Connell v. Dulien Steel Prods., Inc.*, 240 F.2d 414 (5th Cir. 1957).........28

*Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972 (D.C. Cir. 1985) 22

*Fla. Med. Ass'n, Inc. v. U.S. Dep't of Health, Ed. & Welfare*, 601 F.2d 199 (5th Cir. 1979) .....................................................................................22

*Food & Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) ..................................................................................... 5, 24, 25

*Hebert v. Exxon Corp.*, 953 F.2d 936 (5th Cir. 1992)..............................23

*In re Am. Airlines, Inc.*, 972 F.2d 605 (5th Cir. 1992) ...........................13

*In re Clinton*, 970 F.3d 357 (D.C. Cir. 2020)..........................................36

*In re Collier*, 582 F. App'x 419 (5th Cir. 2014) ...............................13, 29

*In re Dean*, 527 F.3d 391 (5th Cir. 2008) ...............................................34

*In re Depuy Orthopaedics, Inc.*, 870 F.3d 345 (5th Cir. 2017)...............19

*In re Dresser Indus., Inc.*, 972 F.2d 540 (5th Cir. 1992) ........................12

*In re F.D.I.C.*, 58 F.3d 1055 (5th Cir. 1995)...........................................15

*In re Gee*, 941 F.3d............................................................................ passim

*In re Hot-Hed Inc.*, 477 F.3d 320 (5th Cir. 2007)...................................31

*In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019) ..................33

*In re Kellogg Brown & Root, Inc.*, 756 F.3d 754 (D.C. Cir. 2014)...........35

*In re Landry*, 83 F.4th (5th Cir. 2023) .............................................12, 15

*In re McBryde*, 117 F.3d 208 (5th Cir. 1997) .................................... 12, 14

*In re Murphy-Brown, LLC*, 907 F.3d 788 (4th Cir. 2018) ...................... 29

*In re Paxton*, 60 F.4th 252 (5th Cir. 2023) .................................... passim

*In re Reyes*, 814 F.2d 168 (5th Cir. 1987)................................................ 31

*In re Rolls Royce Corp.*, 775 F.3d 671 (5th Cir. 2014) ........................... 12

*In re Sealed Petitioner*, 106 F.4th 397 (5th Cir. 2024) .......................... 30

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008).......... passim

*Kerr v. U. S. Dist. Court for N. Dist. of California*, 426 U.S. 394 (1976) 31

*Libertarian Party of Texas v. Fainter*, 741 F.2d 728 (5th Cir. 1984) 33, 34

*Marino v. Ortiz*, 484 U.S. 301 (1988) ...................................................... 13

*Nken v. Holder*, 556 U.S. 418 (2009)....................................................... 24

*Sampson v. Murray*, 415 U.S. 61 (1974) .......................................... 25, 30

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994)................................. 14

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) .................... 22

*Texas v. Biden*, 589 F. Supp. 3d 595 (N.D. Tex. 2022) ........................... 32

*Texas v. Biden*, 646 F. Supp. 3d 753 (N.D. Tex.) .................................... 32

*Texas v. Dep't of Homeland Sec.*, No. 24-40571 (5th Cir. Sep. 11, 2024) ................................................................... 10, 11, 14, 16

*Texas v. Dep't of Homeland Security*, No. 6:23-cv-00007, 2024 WL 1021068 (S.D. Tex. Mar. 8, 2024)................................................ 20, 27

*Texas v. Dep't of Homeland Security*, No. 6:24-cv-00306-JCB (E.D. Tex. Aug. 26, 2024)........................................................................... passim

*Texas v. Garland*, No. 5:23-CV-034-H, 2024 WL 967838 (N.D. Tex. Feb. 27, 2024) ........................................................................................ 20

*Texas v. Mayorkas*, No. 6:23-cv-00001, 2024 WL 4355197 (S.D. Tex. Sept. 29, 2024)................................................................................... 20

*United States v. Davis*, No. 01-30656, 2001 WL 34712238 (5th Cir. July 17, 2001) ........................................................................................ 13

*United States v. Denson*, 603 F.2d 1143 (5th Cir. 1979) ................. 26, 31

*United States v. Monzel*, 641 F.3d 528 (D.C. Cir. 2011) ........................ 15

*United States v. Sineneng-Smith*, 590 U.S. 371 (2020) ..........................28

*United States v. Texas*, __ F. Supp. 3d __, 2024 WL 861526 (W.D. Tex. Feb. 29, 2024) ...................................................................33

*United States v. Texas*, 144 S. Ct. 797 (2024) ...............................8, 14, 25

*United States v. Texas*, 599 U.S. 670 (2023) ...........................................20

*Will v. United States*, 389 U.S. 90 (1967) .................................................26

*Winter v. NRDC, Inc.*, 555 U.S. 7 (2008) ......................................... passim

## Statutes

28 U.S.C. 1292(a)(1) ................................................................................14

5 U.S.C. § 705 .................................................................................7, 22, 32

## Other Authorities

Andrew Kreighbaum & Suzanne Monyak, *Judge's Past Red-State Advocacy Shadows Big Immigration Case*, BLOOMBERG LAW, Sep. 6, 2024, https://news.bloomberglaw.com/daily-labor-report/judges-past-red-state-advocacy-shadows-big-immigration-case ..............................36

*Fact Sheet: President Biden Announces New Actions to Keep Families Together*, WHITE HOUSE (June 18, 2024) https://www.whitehouse.gov/briefing-room/statements-releases/2024/06/18/fact-sheet-president-biden-announces-new-actions-to-keep-families-together/ .........................................................6

Implementation of Keeping Families Together, 89 Fed. Reg. 67459, 67473 (Aug. 20, 2024) ..............................................................................6

Press Release, Ken Paxton Attorney General of Texas, In 75th Legal Action Against the Biden Administration, Attorney General Ken Paxton Sues Over Illegal EEOC Regulatory Guidance Mandating "Gender Identity" Accommodations in the Workplace (May 21, 2024), https://www.texasattorneygeneral.gov/news/releases/75th-legal-action-against-biden-administration-attorney-general-ken-paxton-sues-over-illegal-eeoc ...............................................................................32

Stuart Anderson, *Trump Immigration Plan May End Deportation Safeguards for 2.7 Million*, Forbes (Oct. 3, 2024),

https://www.forbes.com/sites/stuartanderson/2024/10/03/trump-immigration-plan-may-end-deportation-safeguards-for-27-million/...17

**Rules**

Fed R. Civ. P. 65 ................................................................ passim

Fed. R. App. P. 8 ......................................................................25

## INTRODUCTION

For forty-five days, the district court has halted the operation of a nationwide program affecting hundreds of thousands of people, the Keeping Families Together parole process, through sequential, *sua sponte* "administrative stays" that do not purport to address any factors required for injunctive relief or even the exercise of jurisdiction, including State Respondents' standing to bring suit in the first place. Unless this Court intervenes to vacate the most recent so-called administrative stay, it is likely that the Keeping Families Together parole process will remain enjoined for at least seventy-four days—without any heed for the federal rules or binding caselaw that require a reasoned judicial analysis to enjoin the Executive branch. Mandamus relief is required to correct this abuse of authority.

The district court issued its first *sua sponte* administrative stay on August 26, 2024—one business day after Texas and fifteen other states filed their complaint and motion for a temporary restraining order in this matter—and blocked the operation of Keeping Families Together ("KFT"), a process through which certain noncitizen spouses and stepchildren of U.S. citizens can apply for a discretionary grant of parole on a case-by-

case basis under longstanding statutory authority. The district court imposed the stay—a form of relief not requested by the State Respondents—without entertaining any written or oral argument from the Federal Respondents, notwithstanding the fact that our adversarial system of adjudication relies on the *parties* to frame the issues for decision by the courts. On September 4, 2024, the district court extended the stay, again *sua sponte*, and without any further written or oral argument from either party. This Court summarily *further* extended the so-called administrative stay on September 11, 2024, until the evening of Friday, October 4, when this court vacated its September 11 extension order and stay. Less than ninety minutes later, the district court—once again acting *sua sponte*—reimposed its original stay, under the same terms, for thirty-five additional days, until November 8, 2024.

If the stay remains in place until that date, it will have blocked Federal Respondents from issuing grants of parole under Keeping Families Together for seventy-four days—all without any court ever having set out its conclusions, for the benefit of the parties or the review of a higher court, as to how the district court has jurisdiction or how the State Respondents have satisfied the traditional requirements for

injunctive relief. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008); Fed R. Civ. P. 65.

The district court's orders blocking KFT parole are unjustified and amount to a clear abuse of discretion. Together, they impose a form of summary, protracted, nationwide, and *sua sponte* relief unrequested by State Respondents, of a kind which no district court has ever issued before, despite numerous other lawsuits Texas and other states have filed in recent years challenging Biden administration policies. The district court's stay, moreover, will prevent Federal Respondents from implementing Keeping Families Together past Election Day, when this nation's voters will elect the next president, in a contest in which the incumbent party has sought to adopt Keeping Families Together and the opposing party has pledged to eliminate any such exercises of the parole authority, thereby imbuing the court's stay with political significance.

Regardless of whether the court intended that result, the court's unreasoned stay of KFT represents a usurpation of power from the executive branch, and more specifically, from the administration currently in control of the executive branch. To be clear, *if* Texas has standing, Rule 65 authorizes the district court to enjoin the KFT parole

3

process during the pendency of the action and before issuance of a final judgment. It just cannot do so without following the basic requirements for judicial action including writing a reasoned opinion—which has not happened here and must be swiftly corrected.

The district court's unreasoned and unlawful stay of Keeping Families Together exceeds the court's authority and proper judicial role and constitutes an egregious abuse of discretion. The district court's stay should be vacated immediately.

## STATEMENT OF RELIEF SOUGHT

Petitioners Oscar Silva Perez, Natalie Taylor, Justin Doe, Salvador Doe, Cindy Maduena, Jessika Ocampo Hernandez, Ricardo Ocampo Hernandez, Genaro Palomino, Foday Turay, Jaxhiel Turay, Carmen Zayas, and Coalition for Humane Immigrant Rights respectfully request that this Court grant their petition for a writ of mandamus and direct the U.S. District Court for the Tyler Division of the Eastern District of Texas, the Honorable Judge Campbell Barker presiding, to vacate its "administrative stay" of Keeping Families Together until the court considers briefing and, if the court deems it necessary, oral argument

from the parties, and issues an appealable ruling on the merits of Respondent States' claims.

## ISSUE PRESENTED

Whether the district court erred as a matter of law, clearly abused its discretion, and/or exceeded its authority when it *sua sponte* issued a series of "administrative stays" of Keeping Families Together enjoining Federal Respondents from issuing grants of parole that will total seventy-four days, at minimum, without explanation or consideration of Texas's standing to sue, *see Food & Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 378 (2024) (hereinafter "*Hippocratic Med.*"), or of the factors that must be satisfied before a court awards the extraordinary remedy of a preliminary injunction, *see Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008); Fed. R. Civ. P. 65.

## FACTUAL BACKGROUND

On June 17, 2024, the Biden administration announced Keeping Families Together, a new process allowing certain qualifying spouses and stepchildren of U.S. citizens to apply to be considered on a case-by-case basis for a discretionary grant of parole for a period of up to three years. *See* Implementation of Keeping Families Together, 89 Fed. Reg. 67459,

67473 (Aug. 20, 2024) (hereinafter "KFT FRN"). If granted parole, the noncitizen will be considered to have been "inspected and . . . paroled," and will not be required to leave the United States for consular processing to receive the green card for which he or she is already eligible under federal law.[1] Pursuant to longstanding regulations not challenged here, parolees may apply for employment authorization via separate application and agency action. 8 C.F.R. § 274a.12(c)(11). The administration posted for public inspection a Federal Register Notice implementing KFT and began accepting applications on August 19, 2024, and officially published the notice the following day.

KFT offers stability, security, and family unity for mixed-status families who have been living in fear of separation for years. Petitioners Oscar Silva Perez, Natalie Taylor, Justin Doe, Salvador Doe, Cindy Maduena, Jessika Ocampo Hernandez, Ricardo Ocampo Hernandez, Genaro Palomino, Foday Turay, Jaxhiel Turay, and Carmen Zayas are such individuals who stand to benefit from KFT parole and whose lives

---

[1] *Fact Sheet: President Biden Announces New Actions to Keep Families Together*, WHITE HOUSE (June 18, 2024) https://www.whitehouse.gov/briefing-room/statements-releases/2024/06/18/fact-sheet-president-biden-announces-new-actions-to-keep-families-together/.

and family unity are directly impacted by limits and challenges to the process. *Texas v. Dep't of Homeland Security*, No. 6:24-cv-00306-JCB (E.D. Tex. Aug. 26, 2024), ECF No. 15. Petitioner Coalition for Humane Immigrant Rights ("CHIRLA") is a membership organization with members who are eligible for and similarly impacted by KFT. *Id.* Noncitizen Petitioners and CHIRLA members applied for KFT as soon as the process opened for applications. *Id.*

On August 23, 2024, four days after applications opened and after all eligible Petitioners had submitted applications, Texas and fifteen other states[2] filed suit in the Eastern District of Texas, Tyler Division, to challenge the lawfulness of Keeping Families Together parole and request a temporary restraining order, preliminary injunction, and stay of agency action under 5 U.S.C. § 705. *Texas v. Dep't of Homeland Security*, No. 6:24-cv-00306-JCB (E.D. Tex. Aug. 23, 2024), ECF Nos. 1, 3. The very next business day, August 26, before any response from Federal Respondents or any conference with the parties, the district court *sua sponte* granted a form of relief not sought by Texas: a temporary,

---

[2] The Parties have since stipulated that only Texas, not the other fifteen States, will seek to prove standing or irreparable injury in this litigation. *Texas v. Dep't of Homeland Security*, No. 6:24-cv-00306-JCB (E.D. Tex. Oct. 4, 2024), ECF No. 36 at 1.

renewable "administrative stay" enjoining the federal government from granting KFT parole for fourteen days, characterized as "[t]emporary, injunctive relief based significantly on case administration." *Texas v. Dep't of Homeland Security*, No. 6:24-cv-00306-JCB (E.D. Tex. Aug. 26, 2024), ECF No. 27. While the district court acknowledged "the traditional four factors governing preliminary relief," *id.* at 2, it claimed it was not bound by them in providing functionally identical relief via an "administrative stay," *id.* at 1-3. The district court justified this holding principally based on Justice Barrett's two-Justice concurring opinion in *United States v. Texas*, 144 S. Ct. 797 (2024). *Id.* at 1-4. In the same order, the court also *sua sponte* consolidated Texas's pending motion for preliminary relief with summary judgment briefing and a potential bench trial, with briefing to conclude by October 10, 2024, and expressed "that good cause may exist to extend this administrative stay for additional periods through mid-October." *Id.* at 6.

Seeking an opportunity to be heard on the numerous procedural and substantive errors in the district court's "administrative stay," Federal Respondents moved on September 3 to vacate it. *Texas v. Dep't of Homeland Security*, No. 6:24-cv-00306-JCB (E.D. Tex. Sep. 3, 2024),

ECF No. 47. The next day, and again without waiting for a response of any kind, the district court denied Federal Respondents' motion and *sua sponte* extended its administrative stay until at least September 23. The district court then further expedited its already accelerated hearing schedule, given the "rigor" of Federal Respondents' motion, shortening discovery and briefing deadlines and setting a summary judgment hearing and possible bench trial for September 18, 2024—less than one month after State Respondents filed their complaint. *Texas v. Dep't of Homeland Security*, No. 6:24-cv-00306-JCB (E.D. Tex. Sep. 4, 2024), ECF No. 54.

Meanwhile, on August 26, 2024, hours before the district court entered its initial fourteen-day "administrative stay" of KFT grants, Petitioners moved to intervene in the lawsuit to protect their unique and distinct interests in KFT as direct applicants and beneficiaries of the process. *Texas v. Dep't of Homeland Security*, No. 6:24-cv-00306-JCB (E.D. Tex. Aug. 26, 2024), ECF No. 15. The district court denied intervention on September 3, 2024—one day after the motion was fully briefed—and Petitioners appealed to this Court the same day, moving to expedite the appeal to resolve the question of their intervention before

the rapidly approaching district court hearing and possible bench trial. *Texas v. Dep't of Homeland Security*, No. 6:24-cv-00306-JCB (E.D. Tex. Sep. 3, 2024), ECF Nos. 49, 50. The following day, September 4, Petitioners timely filed in the district court an amicus brief in support of Federal Respondents' motion to vacate the administrative stay, focusing on issues unique to Proposed Intervenor-Appellants (Petitioners). *Texas v. Dep't of Homeland Security*, No. 6:24-cv-00306-JCB (E.D. Tex. Sep. 4, 2024), ECF No. 52.

This Court granted Petitioners' motion to expedite their intervention appeal, but on September 11, midway through the parties' expedited briefing schedule, this Court *sua sponte* issued an unpublished order staying the district court proceedings pending resolution of the appeal "or other order of this court" *and* extending indefinitely the "administrative stay" of KFT grants issued by the district court, "pending further order of this court." *Texas v. Dep't of Homeland Sec.*, No. 24-40571 (5th Cir. Sep. 11, 2024) (per curiam), ECF No. 68. The Court also set oral argument on the motion to intervene for October 10. *Id.*

On September 19, Petitioners and Federal Respondents each filed motions with this Court to vacate its extension of the district court's

"administrative stay," requesting that the stay be allowed to expire by its own terms on September 23. The same day that the motions were fully briefed—October 4—this Court issued a two-page unpublished *per curiam* opinion affirming, without analysis, the district court's denial of intervention to Petitioners; canceling oral argument; and lifting its stay order from September 11. *Texas v. Dep't of Homeland Sec.*, No. 24-40571 (5th Cir. Oct. 4, 2024) (per curiam), ECF No. 111. It made no mention of the motions to vacate. *Id.* On the heels of that order, less than nintey minutes later and yet again acting *sua sponte*, the district court reinstated the "administrative stay" of KFT for thirty-five more days (until November 8), and set a hearing for November 5, 2024 (Election Day). *Texas v. Dep't of Homeland Security*, No. 6:24-cv-00306-JCB (E.D. Tex. Oct. 4, 2024), ECF No. 69.

## REASONS TO GRANT THE WRIT

A writ of mandamus may issue if three criteria are met:

First, the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires, a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process. Second, the petitioner must satisfy the burden of showing that [his] right to issuance of the writ is clear and indisputable. Third, even if the first two prerequisites have been met, the issuing court,

in the exercise of its discretion, must be satisfied that the writ
is appropriate under the circumstances.

*In re Rolls Royce Corp.*, 775 F.3d 671, 675 (5th Cir. 2014) (quoting *Cheney*

*v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004) (alterations in

original)). "These hurdles, however demanding, are not insuperable," *In*

*re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (*en banc*)

(quoting *Cheney*, 542 U.S. at 381), and this Court has not hesitated to

issue the writ when its requirements are met. *See, e.g.*, *In re Paxton*, 60

F.4th 252, 260 (5th Cir. 2023) (granting writ to quash a district court

order requiring petitioner's testimony); *In re Landry*, 83 F.4th 300, 303-

08 (5th Cir. 2023) (issuing writ to vacate an expedited remedial hearing

that did not give the state enough time to prepare); *In re Volkswagen of*

*Am., Inc.*, 545 F.3d at 308-09 ("[W]e hold that mandamus is appropriate

when there is a clear abuse of discretion," and issuing the writ to correct

a district court's ruling on a venue transfer motion); *In re Rolls Royce*

*Corp.*, 775 F.3d at 683 (same); *In re McBryde*, 117 F.3d 208, 230 (5th Cir.

1997) (granting petition of district court judge and issuing writ to vacate

reassignment orders in two cases); *In re Dresser Indus., Inc.*, 972 F.2d

540, 546 (5th Cir. 1992) (issuing writ directing district court to enter an

order disqualifying counsel); *In re Am. Airlines, Inc.*, 972 F.2d 605, 628

(5th Cir. 1992) (same); *Am. Trucking Ass'ns, Inc. v. I.C.C.*, 669 F.2d 957, 964 (5th Cir. 1982) (issuing writ to enforce and clarify mandate); *In re Collier*, 582 F. App'x 419, 423 (5th Cir. 2014) (granting writ to vacate contempt order entered without "the procedural protections required by law"); *United States v. Davis*, No. 01-30656, 2001 WL 34712238, at *3 (5th Cir. July 17, 2001) (issuing writ and directing district court to permit criminal defendant in capital case to exercise his Sixth Amendment right to self-representation).

As set forth below, all the prerequisites for issuance of the writ are present here.

## I.   A WRIT OF MANDAMUS IS THE ONLY MEANS PETITIONERS HAVE TO PREVENT THE IRREPARABLE HARM CAUSED BY THE INJUNCTION OF KFT PAROLE.

Petitioners have no means other than mandamus to obtain the relief they seek. As nonparties denied intervention, Petitioners do not have a right to appeal the district court's order. *See Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam) (nonparties have no right of appeal); *Sierra Club v.*

*Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) ("ability to appeal" is among the "legal rights associated with formal intervention").[3]

Any appeal by the federal government, meanwhile, would be an inadequate remedy for several reasons. First, an interlocutory appeal would certainly be the subject of contested justiciability, since the district court's order is by design purportedly unreviewable. *See* 28 U.S.C. 1292(a)(1) (providing for interlocutory review only of injunctions); *United States v. Texas*, 144 S. Ct. 797, 799 (2024) ("So far as I know, this Court has never reviewed the decision of a court of appeals to enter—or not enter—an administrative stay") (Barrett, J. concurring); *cf.* Appellees' Oppositions to Motions to Vacate Stay at 21, *Texas v. Dep't of Homeland Sec.*, No. 24-40571 (5th Cir. Filed Sept. 30, 2024), ECF No. 103 (arguing that this Court has appellate jurisdiction to consider standing and other merits issues only on appeals from "final decisions" or "orders granting or denying preliminary injunctions"). This Court, moreover, has held that

---

[3] Petitioners' nonparty status is no bar to mandamus relief. *See Castillo v. Cameron Cty.*, 238 F.3d 339, 349 n.16 (5th Cir. 2001) (noting that "nonparty status . . . need not bar a petition for mandamus review") (citation and quotation marks omitted); *see also, e.g.*, *In re McBryde*, 117 F.3d at 223 (5th Cir. 1997) (granting mandamus to a nonparty). While Article III standing is of course a prerequisite, *see Castillo*, 238 F.3d at 349 n.16, Petitioners' concrete, particularized, and redressable interest in accessing KFT parole establishes clear standing, *cf. McBryde*, 117 F.3d at 223.

an interlocutory appeal where one party contests justiciability is not an adequate remedy for mandamus purposes. *Cf. In re Paxton*, 60 F.4th at 259; *In re F.D.I.C.*, 58 F.3d 1055, 1060 n. 7 (5th Cir. 1995).

In any event, an appeal by the federal government does not provide *Petitioners* with an adequate remedy. *See United States v. Monzel*, 641 F.3d 528, 534, 544 (D.C. Cir. 2011) (granting nonparty's mandamus after finding she had no adequate remedy because she had no direct right of appeal from the lower-court order at issue, although the government had a right of appeal in which it could raise her interests). To the extent the appeal is noticed or resolved after November 5, the date on which the court is scheduled to hear arguments on dispositive motions and potentially hold a bench trial, it would not reach the unlawful conduct at issue here, which may by then have given way to a final judgment. *See In re Landry*, 83 F.4th at 305 ("[B]ecause this application is wholly different from the merits of the appeal, the state has no adequate remedy by way of appeal").

If this Court does not act, the district court's administrative stay of Keeping Families Together will be in place for at least seventy-four days. This unlawful halt to a parole process for which Petitioners and other

families like them had anticipated and prepared for months in advance, and which would provide them enormous emotional and financial benefit, is inflicting harm on petitioners with each passing day. *See, e.g.*, Appellants' Motion to Vacate Extension of District Court Administrative Stay at 17-21, *Texas v. Dep't of Homeland Sec.*, No. 24-40571 (5th Cir. Sept. 19, 2024), ECF No. 91 (outlining harms to Petitioners). This is harm that cannot be undone even if the district court converts its unlawful stay into a permanent injunction following its November 5 hearing and that injunction is overturned on appeal. *Cf. In re Volkswagen of Am., Inc.*, 545 F.3d at 319 (finding mandamus petitioner had no other adequate remedy where "the harm . . . will already have been done by the time the case is tried and appealed, and the prejudice suffered cannot be put back in the bottle").

## II.  PETITIONERS' RIGHT TO MANDAMUS IS CLEAR AND INDISPUTABLE, AS THE DISTRICT COURT USURPED POWER AND CLEARLY ABUSED ITS DISCRETION.

Petitioners are entitled to a writ directing the district court to dissolve its *de facto* injunction that has masqueraded as an unappealable "administrative stay" since August. Absent this Court's immediate intervention, this *de facto* injunction will have effectively and without

16

justification enjoined KFT implementation for the entire duration of the district court's proceedings, without conforming to federal rules and precedent. Equally troubling, the stay's duration is perfectly timed to coincide with the results of a federal election in which the incumbent administration faces an opponent vowing to dismantle parole-based policies like KFT.[4] Petitioners' right to mandamus here is clear and indisputable for the following reasons.

First, the district court's so-called "administrative stay" is, in substance, an injunction on KFT parole's implementation—one that flouts Federal Rule of Civil Procedure 65, which sets forth stringent requirements for equitable relief. Moreover, it disregards the factors that have long guided the federal courts' issuance of such relief, and it ignores the bedrock principle that federal courts possess limited jurisdiction.

Second, in a show of persistence, the district court proceeded to grant this injunction not once, not twice, but three times, all while failing to assess Texas's standing—a fundamental prerequisite for Article III

---

[4] Stuart Anderson, *Trump Immigration Plan May End Deportation Safeguards for 2.7 Million,* Forbes (Oct. 3, 2024), https://www.forbes.com/sites/stuartanderson/2024/10/03/trump-immigration-plan-may-end-deportation-safeguards-for-27-million/.

jurisdiction. *In re Gee*, 941 F.3d 153, 161 (5th Cir. 2019) ("in the absence of standing, the court has no power to declare the law.") (internal quotations omitted). Worse still, every one of the district court's "administrative stays" have been *sua sponte*, in direct contravention of the party presentation rule, which requires courts to permit the *parties* to make the relevant litigation decisions—not the judge. Such judicial usurpation of power is precisely what a writ of mandamus is designed to rectify.

In this Circuit, petitioners can show a clear and indisputable right to mandamus relief through two paths. *In re Gee*, 941 F.3d at 158. "If the issue is one committed to the discretion of the trial court, a clear and indisputable right to the issuance of the writ of mandamus will arise only if the district court has clearly abused its discretion." *Id.* at 158-9. But "non-discretionary" duties are different: if a district court violated such a duty, "the petitioner *necessarily* has a clear and indisputable right to relief." *Id.* at 159 (collecting cases) (emphasis added). Here, the district court's actions fall short under both standards.

**1.     The district court violated its non-discretionary duty to examine its jurisdiction.**

The district court's decision reflects a profound disregard for binding law on jurisdiction and the rules governing equitable relief. Such actions warrant mandamus relief. *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 357 (5th Cir. 2017) ("when a court plainly acts in excess of jurisdiction, mandamus may issue to prevent the usurpation of power.") (Jones, J., concurring in part).

The bedrock of federal judicial power is a court's "fundamental duty to examine its jurisdiction" before wielding Article III power. *In re Paxton*, 60 F.4th at 256. In the context of a mandamus petition, this duty is "non-discretionary," with standing being perhaps the paramount jurisdictional concern. *In re Gee*, 941 F.3d at 159 (cleaned up). As such, if a district court violates this non-discretionary duty, a mandamus petitioner "necessarily has a clear and indisputable right to relief." *Id.*

This Court has delineated a four-part framework for evaluating when a district court's failure to address jurisdiction may warrant mandamus relief: (1) where there are forceful objections to standing, (2) recognition by the court of the standing concerns, (3) a failure to rule on standing, and (4) when the court is presented with jurisdictional arguments that appear meritorious. *Id.*

All four factors are present in this case. The district court was presented with forceful objections to standing from day one. ECF No. 9. Rather than order briefing or argument, on the next business day after Texas filed suit, the district court *sua sponte* ordered Federal Respondents to suspend any approval of KFT Parole applications via an "administrative stay." ECF No. 27 at 1. About a week later, Federal Respondents moved to vacate the administrative stay and formally challenged Texas's standing. ECF No. 47 at 13-26. Federal Respondents' standing objections were forceful and clearly meritorious, as borne out by a later intervening decision that dismissed Texas's lawsuit—for lack of standing—against a different immigration policy while making similar standing arguments, *Texas v. Mayorkas*, No. 6:23-cv-00001, 2024 WL 4355197, at *4-6 (S.D. Tex. Sept. 29, 2024) (Tipton, J.), and several other recent similar decisions preceding it.[5] Yet in response, the district court

---

[5] *Texas v. Mayorkas*, No. 2:23-cv-00024-AM, 2024 WL 3679380 (W.D. Tex. Aug. 5, 2024) (Moses, C.J.) (dismissing suit over an asylum regulation for lack of standing); *Arizona v. Garland*, No. 6:22-cv-01130, 2024 WL 165417 (W.D. La. Apr. 16, 2024) (Joseph, J.) (dismissing suit over a different asylum regulation for lack of standing); *Texas v. Dep't of Homeland Security*, No. 6:23-cv-00007, 2024 WL 1021068 (S.D. Tex. Mar. 8, 2024) (Tipton, J.) (dismissing suit over parole process for lack of standing); *Texas v. Garland*, No. 5:23-CV-034-H, 2024 WL 967838, at *22 (N.D. Tex. Feb. 27, 2024) (Hendrix, J.) (dismissing claims regarding an immigration-detention related appropriation for lack of standing); *see also United States v. Texas*, 599 U.S. 670 (2023) (dismissing challenge to federal immigration enforcement priorities).

extended its administrative stay for an additional fourteen days—without resolving or even mentioning Texas's standing. ECF No. 54. This pattern of relief-first, jurisdiction-never continued into October 2024 after this Court lifted its own administrative stay. This last administrative stay was issued *sua sponte* (again) and in the late hours of a Friday night after this Court's decision on October 4, 2024—more than a week after the district court's administrative stay would have expired under its original terms. Again, the district court's order contained no mention of Texas's standing.[6]

This cart-before-the-horse methodology flies in the face of the "requirement that jurisdiction be established as a threshold matter," which the Supreme Court has described as "inflexible and without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95

---

[6] Even accepting that a court may need time to deliberate and decide whether a party has satisfied Article III's standing requirement, that does not justify granting expansive judicial relief first—a *de facto* injunction here—and saving the standing questions for another day. *See In re Gee*, 941 at 157 (finding it "strange" when district court refused to consider standing to ease a plaintiff's path to victory); *Barber v. Bryant,* 860 F.3d 345, 352 (5th Cir. 2017) ("Because a preliminary injunction 'may only be awarded upon a clear showing that the plaintiff is entitled to such relief,' the plaintiffs must make a 'clear showing' that they have standing to maintain the preliminary injunction.'") (quoting *Winter,* 555 U.S. at 22). Worse yet, it does not justify this merry-go-round of multiple administrative stays—all issued without any assessment of Texas's standing.

(1998) (cleaned up); *In re Gee*, 941 F.3d at 171 (noting that "jurisdiction [comes] first.").

## 2. The district court violated its non-discretionary duty to comply with the Federal Rules of Civil Procedure and federal Supreme Court precedent.

Before enjoining the federal government, the district court had a non-discretionary duty to abide by Rule 65 and apply the *Winter* factors. It had no discretion to deviate from or set aside these requirements. Indeed, neither rule nor statute, nor even "the All Writs Act empower a district court to abandon the Rules whenever they prove procedurally inconvenient." *Fla. Med. Ass'n, Inc. v. U.S. Dep't of Health, Ed. & Welfare*, 601 F.2d 199, 202 (5th Cir. 1979). Furthermore, 5 U.S.C. § 705, which authorizes a "stay" of an agency rule in certain circumstances not present here, does not remedy the district court's error, as stays under this authority are still subject to the same four-part test as requests for a temporary restraining order or preliminary injunction. *See Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985).

As with the standing issue, the court was made fully aware of how its actions contravened Rule 65. *See, e.g.*, ECF No. 47 at 10. Nevertheless, the district court proceeded on three occasions to issue "administrative

stays" as docket-management orders, despite their injunctive effect and without ever wrestling with the ongoing harm such stays inflict on Petitioners or the remaining *Winter* factors. *See* ECF No. 54 at 4 (purporting to distinguish its *de facto* injunction from a preliminary injunction and thus untethered from the *Winter* test). By consistently and deliberately evading Rule 65, the district court violated another non-discretionary duty, which (as with standing), means "the petitioner *necessarily* has a clear and indisputable right to relief." *In re Gee*, 941 F.3d at 159.

### 3.    The district court's actions also amount to a clear abuse of discretion.

Even if the Court concludes that the district court did not violate a non-discretionary duty (or does not reach that question), the reality is that the culmination of its actions—its stringing of "administrative stays" together end-on-end while avoiding Rule 65—amount to a clear abuse of discretion. *See In re Volkswagen of America, Inc.*, 545 F.3d at 318 (clear abuse of discretion where district court misapplied law, disregarded precedent, and glossed over critical facts); *Hebert v. Exxon Corp.*, 953 F.2d 936, 939 (5th Cir. 1992) (mandamus granted where "district court clearly abused its discretion" by misconstruing standard for a Rule 62

stay). Texas has acknowledged that (in contrast to a stay of judicial proceedings) an injunction "tells someone what to do or not to do" by "direct[ing] the conduct of a party . . . with the backing of its full coercive powers." *See* ECF No. 103 at 18 (citing *Nken v. Holder*, 556 U.S. 418, 428 (2009)). That is precisely what this "administrative stay" is doing: prohibiting the federal government from fully implementing KFT, with the concomitant enormous impact on thousands of human lives and families.

Texas does not actually dispute that the current "administrative stay" or this Court's extension of the district court's prior "administrative stay" meets the common definition of an injunction; nor could it, since it "directs the conduct of a party," telling Federal Respondents "what to do or not to do." *Nken*, 556 U.S. at 428; *see also All. for Hippocratic Med. v. Food & Drug Admin.*, No. 23-10362, 2023 WL 2913725, at *4 (5th Cir. Apr. 12, 2023) (distinguishing a stay from an injunction because it "operates upon the judicial proceeding itself," not "on the conduct of a particular actor.") (internal citation omitted), *rev'd for lack of standing*, *Hippocratic Med.*, 602 U.S. 367 (2024). By design, administrative stays and temporary restraining orders are intended to have brief durations,

mitigating potential harm to the opposing party. *Sampson v. Murray*, 415 U.S. 61, 86 n.58 (1974) ("[T]he authority to issue temporary restraining orders is carefully hedged in Rule 65(b) by protective provisions," of which the "most important" is "the limitation on the time during which such an order can continue to be effective."); *Texas*, 144 S. Ct. at 799 ("an administrative stay is supposed to be a short-lived prelude to the main event . . . ."). This principle underscores the impropriety of indefinitely extending such stays without hewing to the guardrails of the rules of civil and appellate procedure that govern this precise situation. As even Texas concedes, "stays," properly construed, are to be "short-lived," ECF No. 103 at 13, in contrast to the indefinite duration of the judicial order currently restraining Federal Respondents.

As Texas also concedes, no court has yet considered (*inter alia*) jurisdiction, the merits, or the balance of the equities, *see id.* at 22—that is to say, the factors that have long guided and constrained the federal courts' issuance of equitable relief historically, by rule, *see* Fed. R. Civ. P. 65; Fed. R. App. P. 8, and by Article III's standing requirement, *see Hippocratic Med.*, 602 U.S. at 378–80.

And as this Court has recognized, writs of mandamus have issued to "exact a trial court's performance of its duty with little or no discussion of discretion or judgment or balancing of factors." *United States v. Denson*, 603 F.2d 1143, 1147 (5th Cir. 1979) (collecting cases). Indeed, it is in these instances where the appellate court is not just correcting "an evident error" but "is also performing its duty to supervise the actions of a lower court." *Id.*

Here, the district court's abuse of discretion is unmistakable. Mandamus is necessary to prevent such a drastic departure from what is required of a district court under Rule 65. *See Will v. United States*, 389 U.S. 90, 95–96 (1967) ("[T]he writ [of mandamus] has been invoked . . . where a district judge displayed a persistent disregard of the Rules of Civil Procedure promulgated by this Court.").

The district court's professed desire to "preserv[e] its jurisdiction to enter complete relief for [State Respondents] should their lawsuit ultimately prove meritorious," ECF No. 27 at 4, does not justify the court's error in imposing and continuing a "stay" of Keeping Families Together for months on end. As numerous other cases illustrate, an immediate injunction of a challenged federal policy is not necessary for a

court to put a case on an expedited track to final judgment in order to
entertain arguments from the parties, consider the merits of a plaintiff
state's claims, and decide whether relief is warranted. *See* cases cited
*supra* note 6. And indeed, if relief is *not* warranted—either because Texas
has not shown standing or because it has failed on the merits of the states'
claims—a too-hasty so-called stay of a federal policy, issued without due
consideration of the equitable factors set out by the Supreme Court,
inflicts harm on the opposing party; the public interest; and the policy's
intended beneficiaries that cannot be remediated simply by lifting the
"stay" at a later point.[7] *See In re Volkswagen of Am., Inc.*, 545 F.3d at 319
(noting "the prejudice suffered" to a mandamus petitioner "cannot be put
back in the bottle.").

---

[7] *Compare* Complaint, *Texas v. U.S. Dep't of Homeland Sec.*, No. 6:23-CV-00007 (filed
Jan. 24, 2023) (challenging parole processes for nationals of Cuba, Haiti, Venezuela,
and Nicaragua and seeking injunctive relief due to Texas's claims of harm based on
increased costs to the state related to education, health care, and law enforcement)
*with* Complaint, *Texas v. Dep't of Homeland Sec.*, No. 6:24-cv-00306-JCB (Aug. 23,
2024), ECF No. 1 (challenging KFT parole process and seeking injunctive relief due
to substantially similar claims of harm); *compare also Texas v. U.S. Dep't of
Homeland Sec.*, No. 6:23-CV-00007, 2024 WL 1021068 (S.D. Tex. Mar. 8, 2024)
(issuing final judgment following a two-day bench trial and denying injunctive relief
due to Texas's failure to establish standing) *with* Order, *Texas v. Dep't of Homeland
Sec.*, No. 6:24-cv-00306-JCB (Aug. 26, 2024), ECF No. 27 (awarding injunctive relief
in the form of an "administrative stay" one business day after the filing of the
complaint, without consideration of standing or the *Winter* factors).

This "administrative stay" has continued for an already impermissible amount of time that flouts the basic tenets of Rule 65. On the day this petition for writ of mandamus is filed, the administrative stay will have been in effect for forty-five days, far beyond even what Rule 65(b) permits for temporary restraining orders and certainly for so-called "administrative stays." *See* Fed. R. Civ. P. 65(b); *see also Connell v. Dulien Steel Prods., Inc.*, 240 F.2d 414, 417 (5th Cir. 1957) (a TRO that continues past the period permitted by Rule 65(b) "becomes, in effect, a temporary injunction . . . ."). The compounding duration of this "administrative stay," by the district court and this Court during its consideration of a collateral issue separate from the merits, has turned this "administrative stay" into an injunction in form and effect—but with none of the analysis or requirements for an injunction met.

The district court has issued this "administrative stay" *sua sponte* without any responsive briefing, much less a hearing. At the core of all litigation is an adversarial process aimed at resolving disputes, where opposing sides present conflicting views of fact and law to an impartial factfinder to consider and decide. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) ("[W]e rely on the parties to frame the issues for

decision and assign to courts the role of neutral arbiter of matters the parties present."). Moreover, what is contemplated in this adversarial process is for all parties to have the opportunity to present their case and arguments to the factfinder. Yet such a process has not materialized in this case, as the district court has made every decision of consequence *sua sponte*. This fundamental violation of the adversarial process and the party presentation rule makes the district court's abuse of power in issuing this "stay" even more egregious, and correction of such an abuse all the more warranted given the additional corrosive effect the district court's actions will have on the judicial process and its legitimacy. See *In re Collier*, 582 F. App'x at 423 (granting writ to vacate contempt order entered without "the procedural protections required by law").

Additionally, the district court's "administrative stay" thwarts the statutory system for appellate review—a clear abuse of discretion. A writ of mandamus "plainly extends to invalidating district court orders that threaten to undermine the very system of review that the All Writs Act protects." *In re Murphy-Brown, LLC*, 907 F.3d 788, 794 (4th Cir. 2018). The district court's injunction, under the guise of an "administrative stay" on KFT parole grants, directly contravenes the foundational principle

that injunctive relief cannot be insulated from review except for narrow circumstances specifically authorized by rule. *See* Fed. R. Civ. P. 65 *Sampson v. Murray*, 415 U.S. 61, 86–87 (1974) ("A district court, if it were able to shield its orders from appellate review merely by designating them as temporary restraining orders, rather than as preliminary injunctions, would have virtually unlimited authority over the parties in an injunctive proceeding."). The district court's blatant disregard for Rule 65 has frustrated the statutory system in place for appellate review. Issuing the writ is the proper course of action where a district court's order may otherwise evade review. *In re Sealed Petitioner*, 106 F.4th 397, 402 (5th Cir. 2024) (noting this Court's use of mandamus to "settle new and important problems that might have otherwise evaded expeditious review").

For the reasons stated above, the district court's actions in issuing its "administrative stay" amounts to a clear abuse of discretion, thereby making Petitioners' right to issuance of mandamus to correct such errors clear and indisputable. The Court must act to remedy this unlawful conduct. The corrective action here is straightforwardly dictated by this Court's precedent: the "administrative stay" must be vacated and the

district court must be ordered not to repeat its error, lest it continue to flout the rule of law.

## III.   ISSUANCE OF THE WRIT IS APPROPRIATE HERE.

As discussed above, Petitioners satisfy the first two requirements for issuance of a writ: Petitioners have no other adequate means to attain the relief they seek and they have satisfied the burden of showing that their right to issuance of the writ is clear and indisputable. Even once these factors are satisfied, however, "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381; *accord Kerr v. U. S. Dist. Court for N. Dist. of California*, 426 U.S. 394, 403 (1976) ("issuance of the writ is in large part a matter of discretion with the court to which the petition is addressed").

The writ is appropriate here. This Court has repeatedly held that when "the writ of mandamus is sought from an appellate court to confine a trial court to a lawful exercise of its prescribed authority, the court should issue the writ almost as a matter of course." *Denson*, 603 F.2d at 1145; *In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987); *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007). That is precisely the situation this case

presents: The district court has ignored the Federal Rules of Civil Procedure and flouted decades of well-settled law requiring it to conduct a full *Winter*-style analysis to grant the sweeping and prolonged injunctive relief it has cavalierly ordered. *Supra* Section II. The scale and unprecedented nature of the district court's "stay" cannot be overstated. Notwithstanding the large number of lawsuits Texas has brought against the Biden Administration—at least eighty[8]—no district court has ever before purported to justify a multi-month nationwide injunction of federal action under the guise of an "administrative stay." Instead, they do the work necessary to consider their jurisdiction and the *Winter* factors before granting Texas relief. *See, e.g.*, *Texas v. Biden*, 646 F. Supp. 3d 753 (N.D. Tex. 2022) (Kacsmaryk, J.) (granting motion under 5 U.S.C. § 705 to stay termination of the Migrant Protection Protocols); *Texas v. Biden*, 589 F. Supp. 3d 595 (N.D. Tex. 2022) (Pittman, J.) (granting preliminary injunction of an exception to the Title 42 entry ban for

---

[8] In May 2024, Texas noted its "75th Legal Action Against the Biden Administration," Press Release, Ken Paxton Attorney General of Texas, In 75th Legal Action Against the Biden Administration, Attorney General Ken Paxton Sues Over Illegal EEOC Regulatory Guidance Mandating "Gender Identity" Accommodations in the Workplace (May 21, 2024), available at https://www.texasattorneygeneral.gov/news/releases/75th-legal-action-against-biden-administration-attorney-general-ken-paxton-sues-over-illegal-eeoc, and it has filed at least a half dozen more suits since then.

unaccompanied migrant children); *cf. United States v. Texas*, __ F. Supp. 3d __, 2024 WL 861526 (W.D. Tex. Feb. 29, 2024) (Ezra, J.) (granting preliminary injunction of Texas's anti-immigrant state law, SB 4).

There is no excuse for the district court's action. *See In re Paxton*, 60 F.4th at 260 (acknowledging that given error below courts "typically" allow the denial of the writ only "when two conditions are met"—when a "novel or thorny question of law" is at issue, or if the court of appeals can "clarif[y] the proper legal standard" to allow the district court to correct its error). First, there is nothing "novel or thorny" about the proper procedures for granting injunctive relief. Those requirements are "long-established" in this Circuit and require, at a minimum, consideration of each of the four *Winter* factors. *Libertarian Party of Texas v. Fainter*, 741 F.2d 728, 729 (5th Cir. 1984) (setting out four-factor test for awarding injunctive relief); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (same). The district court failed to perform any such analysis. This is not a case where "the district court followed numerous others in errantly applying" the relevant legal standard. *In re JPMorgan Chase & Co.*, 916 F.3d 494, 504 (5th Cir. 2019). Nor is it a case where "the district court, with the best of intentions, misapplied the law" on a legal question

involving a circuit split. *In re Dean*, 527 F.3d 391, 394 (5th Cir. 2008) (per curiam).

Instead, the district court has repeatedly renewed its unlawful stay, enjoining Federal Respondents from fully implementing KFT for forty-five days—and promising to continue that *de facto* injunction past Election Day and the conclusion of a bench trial, a period of at least another thirty-five days. *See* ECF No. 27 at 1-4; ECF No. 54 at 5-6; ECF No. 69 at 3. This kind of sweeping and unreasoned relief is simply unheard of in American law—particularly so in the federal courts (courts of "limited jurisdiction"). Nowhere did the district court find even a "substantial likelihood of [Texas] prevailing on the merits," *Libertarian Party of Texas*, 741 F.2d at 729, the bare minimum for a temporary restraining order. Nor did it find any indication that Texas has standing to bring suit. *See generally* ECF No. 27. Instead, the district court was—and remains—content to rest purely on its "first-blush judgment about the relative consequences of [blocking agency action . . . ] versus allowing it to go into effect," *id.* at 2 (alteration in original) (quotations omitted), entered one business day after Texas filed suit and before Federal

Respondents had a chance to file any responsive briefing. This was "clear and indisputable error." *In re Paxton*, 60 F.4th at 260.

Second, this is not an error that the district court could correct by this Court simply "clarif[ying] the proper legal standard." *Id*. The legal standard is unambiguous and both Federal Respondents and Petitioners, acting as amici, have petitioned the court to correct its error—to no avail. Indeed, the damage has already been done—not only to the U.S. citizens and their noncitizen family members across the country who are eligible for KFT and are being directly and needlessly harmed by the unlawful "stay," but also to the legitimacy of the federal courts themselves, which above all are expected to adhere to the law regardless of who the parties before them are. That too counsels in favor of mandamus. *See In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 763 (D.C. Cir. 2014) (finding mandamus appropriate given that "many organizations are well aware of and deeply concerned about the uncertainty generated by the novelty and breadth of the District Court's reasoning"). The damage is heightened by public awareness of the district judge's own history

working for the same litigant, and litigating similar cases, as his unlawful orders now benefit.[9]

As this Court has recognized, mandamus is "particularly appropriate when the issues also have an importance beyond the immediate case." *In re Volkswagen of Am., Inc.*, 545 F.3d at 319; *see also In re Clinton*, 970 F.3d 357, 368–69 (D.C. Cir. 2020), *on reh'g*, 973 F.3d 106 (D.C. Cir. 2020) (finding mandamus appropriate "in order to forestall future, similar errors by district courts") (collecting cases). Anything short of vacatur of the district court's stay below will not only result in manifest injustice in this case, but could embolden other courts to follow its path, further delegitimizing the federal judiciary. If the Eastern District of Texas can get away with a *seventy-four-day* "administrative stay" (a form of relief not even requested by Texas) blocking a nationwide process for which over half a million U.S. residents are eligible, what is to prevent other judges from similarly eschewing the law in favor of convenience and ease? Such an approach may be all the more desirable

---

[9] *See* Andrew Kreighbaum & Suzanne Monyak, *Judge's Past Red-State Advocacy Shadows Big Immigration Case*, BLOOMBERG LAW, Sep. 6, 2024, https://news.bloomberglaw.com/daily-labor-report/judges-past-red-state-advocacy-shadows-big-immigration-case ("The judge who paused the Biden administration's latest immigration program challenged by red states previously helped lead litigation against deportation relief policies while with the Texas attorney general's office").

to district courts because it enables them to indefinitely insulate injunctions from review—or to run down the clock on a policy of the sitting administration until a new election, as in this case. The Court must not allow this egregious judicial overreach to continue.

## CONCLUSION

For the reasons above, Petitioners respectfully request that the Court grant the petition, vacate the district court's "administrative stay," and direct the district court not to re-impose such injunctive relief without entertaining briefing and, if the court deems it necessary, oral argument from the parties, and issuing an appealable order.

Dated: October 10, 2024

Respectfully submitted,

*/s/ Esther H. Sung*
Esther H. Sung
Karen C. Tumlin
Hillary Li
Laura Flores-Perilla
Brandon Galli-Graves
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
Facsimile: (323) 450-7276

Paige Austin
Harold A. Solis
MAKE THE ROAD NEW YORK
301 Grove Street

Brooklyn, NY 11237
Telephone: (718) 418-7690
Facsimile: (866) 420-9169

*Counsel for Petitioners*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this Petition complies with the page and type volume limitations of Federal Rule of Appellate Procedure 21(d) and 32(a) because:

1. Exclusive of the exempted portions in Fed. R. App. P. 21(d) and 5th Cir. R. 21, this certificate of compliance, and the tables of contents and authorities, the Petition contains 7,800 words.
2. The brief has been prepared in proportionally spaced typeface, Font Size 14, using Microsoft Word.
3. The undersigned understands a material representation in completing this certificate, or circumvention of the type-volume limits, may result in the Court's striking the Petition and imposing sanctions against the person signing the Petition.

Dated: October 10, 2024

*/s/ Esther H. Sung*
Esther H. Sung
Justice Action Center
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272

*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I, Esther H. Sung, hereby certify that on October 10, 2024, this document has been filed with the clerk of the court and served by ECF or email upon counsel of record in the underlying litigation, *Texas v. Department of Homeland Security*.

I further certify that some of the participants in the case are not registered CM/ECF users. I have emailed and/or mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Honorable John Campbell Barker

United States District Clerk's Office

United States Courthouse

211 W. Ferguson

Tyler, TX 75702

*/s/ Esther H. Sung*
Esther H. Sung
Justice Action Center
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272

*Counsel for Petitioners*