**No. 24-40671**

# In the United States Court of Appeals for the Fifth Circuit

In re Oscar Silva Perez; Natalie Taylor; Coalition for Humane Immigrant Rights; Justin Doe; Salvador Doe; Cindy Maduena; Jessika Ocampo Hernandez; Ricardo Ocampo Hernandez; Genaro Palomino; Foday Turay; Jaxhiel Turay; and Carmen Zayas,

*Petitioners.*

On Petition for Writ of Mandamus
to the United States District Court
for the Eastern District of Texas, Tyler Division

## STATE RESPONDENTS' OPPOSITION TO PETITIONERS' EMERGENCY MOTION FOR STAY OF DISTRICT COURT'S ADMINISTRATIVE STAY

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Aaron L. Nielson
Solicitor General
Aaron.Nielson@oag.texas.gov

William F. Cole
Deputy Solicitor General

Counsel for State Respondents

# Certificate of Interested Persons

No. 24-40671

In re Oscar Silva Perez; Natalie Taylor; Coalition for Humane Immigrant Rights; Justin Doe; Salvador Doe; Cindy Maduena; Jessika Ocampo Hernandez; Ricardo Ocampo Hernandez; Genaro Palomino; Foday Turay; Jaxhiel Turay; and Carmen Zayas,
*Petitioners.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, State Respondents (the States of Texas, Alabama, Arkansas, Florida, Georgia, Idaho, Iowa, Kansas, Louisiana, Missouri, North Dakota, Ohio, South Carolina, South Dakota, Tennessee, and Wyoming), as governmental parties, need not furnish a certificate of interested persons.

/s/ Aaron L. Nielson
Aaron L. Nielson
*Counsel of Record for State Respondents*

# Table of Contents

Page

Certificate of Interested Persons .............................................................i

Table of Authorities ................................................................................iii

Introduction ............................................................................................1

Background ..............................................................................................3

    A.  The States' challenge to the PIP program. ..........................3

    B.  The district court's expedited proceedings. ........................3

    C.  Petitioners' intervention motion and expedited appeal. .....5

    D.  Petitioners' challenge to this Court's administrative stay...................6

Argument.................................................................................................7

    I.    Petitioners Are Unlikely to Succeed on the Merits. ..................7

        A.  Petitioners lack standing to seek emergency relief. ............7

        B.  The district court's challenged order is plainly lawful. ....................10

        C.  Petitioners' counterarguments are meritless. ...................14

    II.  The Remaining Stay Factors Do Not Favor Petitioners. ..........16

Conclusion.............................................................................................19

Certificate of Service.............................................................................20

Certificate of Compliance .....................................................................20

# Table of Authorities

**Page(s)**

*Ala. Ass'n of Realtors v. Dep't of Health & Human Servs.*,
594 U.S. 758 (2021) ...................................................................................... 18

*Ali v. City of Chicago*,
34 F.4th 594 (7th Cir. 2022) .......................................................................... 9

*In re Avantel, S.A.*,
343 F.3d 311 (5th Cir. 2003) ........................................................................ 16

*In re Beazley Ins. Co.*,
No. 09-20005, 2009 WL 7361370 (5th Cir. May 4, 2009) ............................ 16

*Castillo v. Cameron Cnty.*,
238 F.3d 339 (5th Cir. 2001) .......................................................................... 9

*Cheney v. U.S. Dist. Court for D.C.*,
542 U.S. 367 (2004) ........................................................................... 9, 11, 13

*Cuomo v. U.S. Nuclear Regulatory Comm'n*,
772 F.2d 972 (D.C. Cir. 1985) ...................................................................... 15

*Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*,
45 F.4th 846 (5th Cir. 2022) ........................................................................ 10

*E.T. v. Paxton*,
19 F.4th 760 (5th Cir. 2021) ......................................................................... 12

*Edwards v. City of Houston*,
78 F.3d 983 (5th Cir. 1996) (en banc) ............................................................ 8

*In re Gee*,
941 F.3d 153 (5th Cir. 2019) ........................................................................ 15

*Guenther v. BP Ret. Plan*,
50 F.4th 536 (5th Cir. 2022) .......................................................................... 8

*Jones v. Belhaven Coll.*,
98 F.App'x 283 (5th Cir. 2004) .................................................................... 13

*La Union del Pueblo Entero v. Abbott*,
93 F.4th 310 (5th Cir. 2024) .......................................................................... 8

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ...................................................................................... 11

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ...................................................................................... 15

iii

*NFIB v. Dep't of Lab.*,
   595 U.S. 109 (2022) ......................................................................... 18

*SEC v. LBRY, Inc.*,
   26 F.4th 96 (1st Cir. 2022) ................................................................. 8

*Shawnee Tribe v. Mnuchin*,
   984 F.3d 94 (D.C. Cir. 2021) .............................................................. 18

*Sprint Commc'ns Co. v. APCC Servs., Inc.*,
   554 U.S. 269 (2008) ......................................................................... 17

*Tex. All. for Retired Ams. v. Hughs*,
   976 F.3d 564 (5th Cir. 2020) .............................................................. 12

*Texas v. Biden*,
   20 F.4th 928 (5th Cir. 2021) ......................................................... 10, 14

*Texas v. DHS*,
   No. 24-40571, 2024 WL 4404421 (5th Cir. Oct. 4, 2024).................... 1, 2, 6, 8

*Texas v. United States*,
   787 F.3d 733 (5th Cir. 2015) ............................................................... 7

*Texas v. United States*,
   809 F.3d 134 (5th Cir. 2015) ......................................................... 10, 17

*Texas v. United States*,
   86 F.Supp.3d 591 (S.D. Tex. 2015) ..................................................... 10

*United States v. Colomb*,
   419 F.3d 292 (5th Cir. 2005) .............................................................. 11

*United States v. Hall*,
   472 F.2d 261 (5th Cir. 1972) .............................................................. 13

*United States v. N.Y. Tel. Co.*,
   434 U.S. 159 (1977) ......................................................................... 11

*United States v. Texas*,
   144 S.Ct. 797 (2024) ............................................................ 2, 11, 12, 14

*United States v. U.S. Dist. Ct., S. Dist. of Tex.*,
   506 F.2d 383 (5th Cir. 1974) ......................................................... 10, 12

*United States v. United Mine Workers of Am.*,
   330 U.S. 258 (1947) ......................................................................... 13

*Veasey v. Abbott*,
   870 F.3d 387 (5th Cir. 2017) .............................................................. 12

*Virginian Ry. Co. v. United States*,
   272 U.S. 658 (1926) ......................................................................... 13

*Williams v. Davis*,
    No. 22-30181, 2023 WL 119452 (5th Cir. Jan. 6, 2023) ..................................... 15

**Statutes, Rules, and Regulations:**

5 U.S.C. §705 .................................................................... 2, 5, 11, 12, 13, 14, 15, 17

8 U.S.C.:
    §1182(a)(9)(B)(i)(II) ................................................................................3
    §1182(d)(5)(A) .........................................................................................3
    §1255(i) .....................................................................................................3

28 U.S.C. §1651(a) ...................................................................................... 3, 11, 12

Fed. R. Civ. P.:
    65 ................................................................................................... 13, 14, 15
    65(b)(2) ...................................................................................................13

Implementation of Keeping Families Together
    89 Fed. Reg. 67,459 (Aug. 20, 2024) ...................................................3

# Introduction

Petitioners' motion gives short shrift to a critical fact: The district court denied their motion to intervene in the underlying litigation more than a month ago, and this Court affirmed that decision just over a week ago. *See Texas v. DHS*, No. 24-40571, 2024 WL 4404421 (5th Cir. Oct. 4, 2024). Petitioners have not sought rehearing of this Court's decision—even though the mandate has not issued. Instead, they opted to initiate a separate mandamus proceeding and to file the instant emergency motion for a stay. Worse yet, their lead counsels' notices of appearance state:

> **Name of Lead Counsel:** Esther H. Sung
> A. Name of any Circuit Judge of the Fifth Circuit who participated in this case in the district or bankruptcy court.
>
> _____
>
> B. Inquiry of Counsel. To your knowledge:
> (1) Is there any case now pending in this court, which involves the same, substantially the same, similar or related isssue(s)?
>
> [ ] Yes     [✓] No

By any measure, Petitioners' latest pleadings are at least "related" to their previous unsuccessful appeal in No. 24-40571. And if Petitioners had a valid argument for mandamus or emergency relief, they would have asked for it (likely weeks ago) from the panel of this Court that resolved their first appeal and which is already intimately familiar with this litigation. That they did not do so speaks volumes.

Nor do Petitioners address *why* this Court affirmed the district court's "well-reasoned and comprehensive" decision holding that they are not entitled to intervene. *Texas*, 2024 WL 4404421 at *1. The district court concluded that the federal government will adequately represent their interests, and after "review[ing] the extensive briefing, the record, and the applicable law," this Court agreed. *Id.* That the federal government does not seek emergency relief—indeed, has not even objected to the order Petitioners ask this Court to stay—also speaks volumes.

Petitioners' arguments also disregard that much of the delay they complain about would not have happened had they not filed a meritless appeal of the denial of intervention. This case was racing toward a September 18, 2024 hearing in the district court, with a final judgment soon thereafter. Not content to participate as *amici* in those expedited proceedings, however, Petitioners insisted that this Court should reverse the district court's intervention ruling. The Court thus ordered expedited briefing and entered its own administrative stay, and then affirmed the district court's "well-reasoned and comprehensive Opinion and Order." *Texas*, 2024 WL 4404421 at *1. If Petitioners had not appealed, the district court's proceedings would likely already be done. It is therefore entirely out of bounds for Petitioners to impugn the integrity of the district judge (at 3 n.4, 5) without a shred of evidence and accuse him of undermining "the public legitimacy of the federal judiciary and its ability and willingness to dispense justice in an evenhanded manner." *See also* Pet. 35-36.

Finally, Petitioners' pleadings ignore the many cases that the States briefed to this Court two weeks ago holding that federal courts enjoy inherent and statutory power to issue administrative stays. *See* No. 24-40571, ECF 103; *see also United States v. Texas*, 144 S.Ct. 797, 798 n.1 (2024) (Barrett, J., concurring in denial of applications to vacate stay). Here, however, the district court did not simply enter an administrative stay—though that would have been sufficient—but also a temporary restraining order ("TRO") and stay under §705 of the Administrative Procedure Act ("APA"). Petitioners' failure to meaningfully address any of these authorities confirms that neither mandamus nor an emergency stay is warranted. And if there were any doubt, the remaining factors also uniformly cut against Petitioners.

## Background

### A. The States' challenge to the PIP program.

This litigation arises out of a challenge by a coalition of States to the Biden-Harris Administration's Parole-in-Place program ("PIP program"), which purports to create a pathway to legal status for over 1.3 million aliens who have been unlawfully in the country for ten years or more. *See* Implementation of Keeping Families Together, 89 Fed. Reg. 67,459 (Aug. 20, 2024). Because Congress has not authorized the PIP program, *see* 8 U.S.C. §§1182(a)(9)(B)(i)(II), 1255(i), and certainly not *en masse*, *see id.* §1182(d)(5)(A) (requiring "case-by-case" review), the States sued the Department of Homeland Security ("DHS") on August 23. ROA.29-30.[1] The same day they filed their complaint, the States sought a temporary restraining order, preliminary injunction, or stay of the rule. ROA.96-161.

### B. The district court's expedited proceedings.

On August 26, Judge J. Campbell Barker—the district judge here—invoked the All Writs Act, 28 U.S.C. §1651(a), and the court's "inherent authority to manage its docket" to issue a 14-day administrative stay of the PIP program under which DHS was permitted to continue *accepting* applications but was prohibited from *approving* new applications or *granting* parole. ROA.527-32.

The court explained that it "ha[d] undertaken a first-blush review of the merits of plaintiffs' standing and cause of action in light of the evidence submitted with their

---

[1] Given the expedited nature of Petitioners' motion and the overlap between the two appeals, this factual recitation draws from the States' briefing filed in No. 24-40571, and all ROA cites are to the record from that related appeal.

motion for a TRO and a stay," and concluded "[t]he claims are substantial and warrant closer consideration than the court has been able to afford to date." ROA.529. But it did not "express any ultimate conclusions about the success or likely success of those claims." ROA.530. Instead, preventing DHS "from granting parole under the rule's process for a short time," ROA.531, served to "preserv[e] its jurisdiction to enter complete relief for plaintiffs should their lawsuit ultimately prove meritorious." ROA.530. This was necessary, the court found, because it could "not presently perceive how to practicably unwind parole once issued." ROA.531.

Because DHS's "mere acceptance of applications" would not "pose the same practical risks of irreversibility," however, the court specified that its stay "does not apply to the agency's creation of a process for *seeking* parole in place under the rule, as opposed to the *granting* of parole in place under the rule." ROA.531. Recognizing the need for promptness, the court also set an expedited schedule, requiring the administrative record to be completed by September 9, discovery by September 16, and dispositive motions by October 10, ROA.532-35.

Eight days later, the federal government filed a nearly 60-page motion asking the district court to vacate its stay. ROA.633-91. The court refused, first outlining the legal authority for its stay, ROA.734-35, then holding that nothing in the motion "significantly change[s] the court's conclusion about the equities bearing on the need to preserve the status quo ante for a short period," ROA.736. The court reiterated that "an unlawful grant of parole" would be "very difficult to unwind after the fact given the immediate incurring of reliance interests after parole is granted." ROA.736. In contrast, "the burden to the government of a relatively short restraint on issuing

parole under the rule" was "much smaller" because "[a]pplications for parole under the rule can, with minimal administrative disruption, be processed as usual and held for approval, which can then proceed if the government prevails after the upcoming hearing on the facts and the law." ROA.736. Likewise, the burden of a stay of the program on beneficiaries of the PIP program was slight given they "must have been continuously present in this country without admission or parole for ten years," and a further restraint on parole for a few weeks "is much shorter than the potential" alternative of "three- or ten-year periods of waiting abroad." ROA.736.

"The rigor of defendants'... 60-page filing," however, "convince[d] the court that a hearing on the facts and the law [could] be scheduled on an even more accelerated schedule," so the district court issued a revised scheduling order setting even tighter deadlines, including setting the close of discovery for September 11, dispositive motions for September 13, responses to the dispositive motions on September 16, and a bench trial for September 18. ROA.737-38. The court also extended its "temporary stay and restraining order for an additional 14-day period, such that it [was to] expire[] at the end of September 23, 2024"—enough time to complete trial and, presumably, for the court to issue a decision. ROA.737. Thus, the court concluded that "[g]iven the alignment of the equities at this point, plaintiffs' likelihood of success on the merits is substantial enough to justify a §705 stay and temporary restraining order limiting parole issuance under the rule." ROA.736.

## C.  Petitioners' intervention motion and expedited appeal.

While the parties were litigating the propriety of the district court's administrative stay, Petitioners moved to intervene as defendants. ROA.253-76. The district

court denied the motion because Petitioners and the federal government shared the same "ultimate objective" of preserving the PIP program, meaning the federal government could adequately represent Petitioners' interests in this litigation. ROA.697-700. The court allowed Petitioners to participate as *amici*, however, which Petitioners took advantage of by filing an *amicus* brief in support of the federal government's motion to vacate the administrative stay. ROA.706-31.

Nevertheless, Petitioners appealed the district court's denial of their intervention motion. ROA.703. This Court set an aggressive schedule under which the entire appeal would be briefed in less than 10 days and issued its own administrative stay "pending further order of this court." No. 24-40571, ECF 68 at 2.

### D. Petitioners' challenge to this Court's administrative stay.

Following expedited briefing on the question of intervention, the federal government and Petitioners moved this Court to vacate its administrative stay, arguing that it was not authorized by law. In response, the States explained why such power exists and was appropriately exercised. *See* No. 24-40571, ECF 103.

On October 4, 2024, a panel of this Court determined—unanimously—that the district court properly denied Petitioners' intervention motion. *Texas*, 2024 WL 4404421 at *1. The Court also vacated its administrative stay. *Id.* Accordingly, to ensure that DHS does not irreparably harm the States by granting parole before judicial review is possible, the district court promptly reinstated its "temporary stay

and restraining order" until November 8, 2024. Pet. Ex. 4 at 3.[2] The district court also ordered the parties to engage in an aggressive pre-trial briefing schedule and scheduled a factual hearing (with a potential bench trial) for November 5. *Id.* at 2-3. The federal government has not objected to that order. The district court also invited Petitioners to file an amicus brief of up to 45 pages by October 25. *Id.* at 2.

## ARGUMENT

Petitioners concede that the traditional stay factors govern their emergency motion, namely "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether [he] will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure … other parties …; and (4) where the public interest lies." Mot.6 (quoting *Texas v. United States*, 787 F.3d 733, 746-47 (5th Cir. 2015)). None of those factors supports Petitioners.

## I. Petitioners Are Unlikely to Succeed on the Merits.

### A. Petitioners lack standing to seek emergency relief.

Petitioners' motion fails at the outset because they have no right to be here. After being denied intervention because the federal government will adequately represent their interests, Petitioners—as nonparties—cannot advance litigation positions that the federal government has declined to pursue. Otherwise, party status would be

---

[2] Because this Court's vacatur of its administrative stay is part of the Court's opinion (which remains subject to petitions for rehearing), it is the States' understanding that absent further order of the Court, this Court's administrative stay of any parole grants remains in place until the Court's mandate issues.

irrelevant. Petitioners' motion thus is little more than a direct challenge to this Court's affirmance of the district court's denial of intervention.

Just over a week ago, this Court affirmed the conclusion that Petitioners are not entitled to intervene as parties because the federal government shares the same ultimate objective: Preserving the PIP program. *Texas*, 2024 WL 4404421 at *1. The federal government is thus solely responsible for the program's defense because, under this Court's precedent, "differences of opinion regarding an existing party's litigation strategy or tactics … without more does not raise to adversity of interest." *Guenther v. BP Ret. Plan*, 50 F.4th 536, 543 (5th Cir. 2022); *see also SEC v. LBRY, Inc.*, 26 F.4th 96, 99-100 (1st Cir. 2022).

Nonetheless, Petitioners—but not the federal government—challenge the district court's October 4 decision to issue a TRO and temporary stay. If Petitioners could do this, this Court's holding that the federal government is the proper defendant would be meaningless. Litigation would also be unmanageable, as nonparties could rush to this Court using mandamus—coupled with motions for emergency relief—to challenge case-management decisions. No district court could manage a case, and restrictions on interlocutory appeals would be pointless.

Unsurprisingly, Petitioners' view is not the law. As a rule, "one who is not a party to a lawsuit, or has not properly become a party, has no right to appeal a judgment entered in that suit." *Edwards v. City of Houston*, 78 F.3d 983, 993 (5th Cir. 1996) (en banc). The exception to that rule is narrow. A nonparty must (1) have "actually participated in the proceedings," (2) be supported by "'the equities,'" and (3) "'have a personal stake in the outcome.'" *La Union del Pueblo Entero v. Abbott*,

93 F.4th 310, 315 (5th Cir. 2024) (quoting *Castillo v. Cameron Cnty.*, 238 F.3d 339, 350 (5th Cir. 2001)).

Petitioners cannot satisfy either of the first two requirements. As to the first, the district court concluded that Petitioners have no right to be parties in this case, and this Court affirmed. A *meritless* intervention motion at the threshold of a case is not sufficient participation to allow a nonparty to seek emergency relief from this Court. Instead, courts have "recognized repeatedly that, until a movant for intervention is made a party to an action, it cannot appeal any orders entered in the case other than an order denying intervention." *Ali v. City of Chicago*, 34 F.4th 594, 596 (7th Cir. 2022) (quotation omitted). As to the second requirement, it is extraordinarily inequitable for Petitioners to appeal the denial of intervention, *lose* that appeal, and then act as if this Court's decision is irrelevant. And it is even more inequitable to impugn the integrity of a federal judge while doing so. *See* Pet.35-36; Mot.3 n.4, 5.

To be sure, Petitioners do not appeal the district court's October 4 order—they challenge it via mandamus and seek an emergency stay. But that distinction supports the States, not Petitioners. After all, the mandamus standard is more difficult than the standard for an ordinary appeal. To obtain mandamus relief, Petitioners must not only show that their argument is legally correct, but also that (1) they have a "clear and indisputable" right to the writ, (2) the Court is "satisfied that the writ is appropriate under the circumstances," and (3) they have "no other adequate means to attain [] relief.'" *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004).

Petitioners cannot satisfy any of those requirements. Regarding the first, they would not have standing to appeal, let alone a "clear and indisputable" right to seek

emergency relief from this Court. *See, e.g.*, *United States v. U.S. Dist. Ct., S. Dist. of Tex.*, 506 F.2d 383, 384 (5th Cir. 1974) (holding that "non-party" lacked standing to petition for mandamus and, regardless, that such "extraordinary" relief was not warranted). Such relief would also not be "appropriate under the circumstances" here given, among other things, that it would circumvent this Court's opinion from just over a week ago. Moreover, it would further thwart the district court's attempts to expedite this litigation, which were stymied for weeks by Petitioners' ill-advised appeal. Even now, the district court has ordered—without objection from the federal government—that its TRO and temporary stay will end in less than a month.

As to the third requirement, because the federal government represents their interests, Petitioners have other means to attain relief. To be sure, the States do not believe the federal government can prevail because the States have standing and the PIP program is unlawful. *See, e.g.*, *Texas v. United States*, 86 F.Supp.3d 591, 669 n.101 (S.D. Tex. 2015), *aff'd Texas v. United States (DAPA)*, 809 F.3d 134 (5th Cir. 2015), *aff'd by an equally divided court*, 579 U.S. 547, 548 (2016) (per curiam); *Texas v. Biden (MPP)*, 20 F.4th 928, 997 (5th Cir. 2021), *rev'd on other grounds*, 597 U.S. 785 (2022); *see also Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 856 n.2 (5th Cir. 2022). For present purposes, however, it is enough that it is not Petitioners' inability to participate that prevents them from obtaining relief.

## B. The district court's challenged order is plainly lawful.

Petitioners, the federal government, and the States have already filed extensive briefing in No. 24-40571 concerning the lawfulness of administrative stays. Petitioners recycle many of their same objections in their new pleadings—but their

arguments have not improved. Just the opposite; their arguments are demonstrably worse because the district court did not rely solely on its authority to issue administrative stays but instead issued a TRO and stay under 5 U.S.C. §705.

**1.** Federal courts have inherent and statutory authority to issue short-term administrative stays. For example, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Such inherent authority, moreover, is augmented by the All Writs Act, which creates "auxiliary" powers," *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 173 (1977), to issue "appropriate" orders "in aid" of their jurisdiction, 28 U.S.C. §1651(a). Following the Supreme Court's lead, this Court has held that "[t]he federal courts are vested with inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *United States v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005) (cleaned up).

Thus, as Justice Barrett explained recently, an administrative stay flows naturally from these two sources of authority. *Texas*, 144 S.Ct. at 798 & n.1. They are "an exercise of [a court's] docket-management authority" that "buys the court time to deliberate" and "maintain the status quo." *Id.* at 798 & n.2. And given the "short-lived" nature of such stays, "there is no jurisprudence of administrative stays, much less a one-size-fits-all test that courts apply before entering one," *id.* at 799—a fact that makes it exceptionally difficult for Petitioners to show that the district court clearly and indisputably erred by entering one, *see Cheney*, 542 U.S. at 380-81. That is natural: "Play in the joints seems appropriate for a measure that functions as a

flexible, short-term tool." *Texas*, 144 S.Ct. at 799. The Supreme Court itself "frequently" use administrative stays for this purpose, as does this Court and its sister courts. *Id.* at 798.

The district court's administrative stay here falls comfortably within this authority. For one, it was a clear "exercise of" that court's "docket-management authority" designed to "freeze legal proceedings," *id.*, pending jurisdictional discovery. Thus, the district court's stay was on its face "necessary or appropriate in aid of" its "jurisdiction[]," 28 U.S.C. §1651(a); *see* ROA.531, 736. For another, all the district court did was maintain the status quo temporarily before the federal government makes decisions that are difficult to unwind. *See Texas*, 144 S.Ct. at 798 & n.2. *Accord E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021); *Tex. All. for Retired Ams. v. Hughs*, 976 F.3d 564, 568 (5th Cir. 2020); *Veasey v. Abbott*, 870 F.3d 387, 391-92 (5th Cir. 2017) (per curiam).

**2.**   The district court, however, did not simply rest its decision on its power to order temporary administrative stays. Instead, it clearly—and repeatedly—explained that it was also issuing its orders under its statutory authority to enter TROs and statutory stays under §705 of the APA. *See, e.g.*, ROA.733, 734, 735, 736, 737; Pet. Ex. 4 at 3. Indeed, to avoid any uncertainty, the court stated that "plaintiffs' likelihood of success on the merits is substantial enough to justify a *§705 stay and temporary restraining order*" and "[t]o be clear, defendants and their officers, agents, servants, and employees are *temporarily restrained* and enjoined from issuing parole under the challenged rule …." ROA.736-37 (emphases added).

District courts regularly issue TROs. Under Federal Rule of Civil Procedure 65, a district court may issue a TRO for 14 days, and for "good cause" may extend the TRO so long as it provides "reasons for an extension." Fed. R. Civ. P. 65(b)(2). Here, the district court did just that. It has explained—clearly—that the States have shown a sufficient likelihood of success on both standing and the merits to warrant such temporary relief, especially given "the equities support preserving the status quo for a short period." ROA.734 (following, *inter alia*, *Virginian Ry. Co. v. United States*, 272 U.S. 658 (1926)). After all, "plaintiffs' claims are serious and substantial enough to justify considering the irreparable harm and burdens of either withholding or imposing a temporary stay." ROA.735; *see also* ROA.529 (addressing "standing" and the merits). Furthermore, the federal government sought "jurisdictional discovery," ROA.527, which the court ordered on a highly expedited schedule.

Petitioners' motion does not argue that was an inappropriate use of a TRO—thus forfeiting any such objection—much less clearly and indisputably so, *Cheney*, 542 U.S. at 380-81. Regardless, even if Petitioners were a party, they could not successfully challenge the district court's eminently sensible case-management decision. *See, e.g.*, *Jones v. Belhaven Coll.*, 98 F.App'x 283, 284 (5th Cir. 2004) ("The district court did not abuse its discretion extending the TRO as the court had the inherent authority to preserve the status quo until the question of its jurisdiction could be resolved." (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 292–93 (1947); *United States v. Hall*, 472 F.2d 261, 265 (5th Cir. 1972)).

Furthermore, the district court relied on its authority under §705 of the APA, which empowers a "reviewing court" "to prevent irreparable injury" by "issu[ing]

all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. §705; *see also, e.g.*, ROA.736 (entering "a §705 stay and [TRO]").

Petitioners say remarkably little about the district court's reliance on §705. Given that this Court (and, indeed, the Supreme Court) has already upheld State standing to challenge programs like the PIP program, *see supra* at 10, and that this Court has held that DHS "cannot … parole aliens *en masse*," *MPP*, 20 F.4th at 997, there is no basis to say that the district court erred at all, much less so clearly that mandamus is warranted.

## C.  Petitioners' counterarguments are meritless.

Petitioners disagree with the district court's discretionary exercise of its case-management authority, but their counterarguments fail. Instead of addressing the district court's authority to issue administrative stays, for example, they claim that the court effectively granted a preliminary injunction without following Rule 65 or addressing the four traditional factors for issuing preliminary injunctions. *See* Mot.7. Yet administrative stays would serve no purpose if they were treated the same as a preliminary injunction. Their point is not to address the merits but instead to give a court time to decide. *See Texas*, 144 S.Ct. at 798. Here, the district court reviewed the States' pleadings and request for injunctive relief and issued a temporary stay to allow jurisdictional discovery and to give the court time to carefully resolve the issues in this highly consequential case. ROA.529.

Nor did the district court simply issue an administrative stay; it invoked its authority to issue a TRO and a statutory stay under §705. Petitioners ignore that the

district court exercised its power to enter a TRO under Rule 65, and they cite no precedent addressing §705 at all.[3] By itself, this means they have not shown that the district court erred, much less so clearly as to warrant mandamus relief.

Nor are Petitioners' specific contentions better. They argue, for example, that the district court should have resolved standing first. *See, e.g.*, Mot.2. But the district court considered the States' "standing" when it concluded that they made a sufficient showing to justify a temporary pause of the PIP program to allow the parties to engage in "jurisdictional discovery." ROA.529. Petitioners' suggestion that the court refused to consider jurisdiction—the flaw in *In re Gee*, 941 F.3d 153, 157 (5th Cir. 2019)—thus disregards the record. Furthermore, when the district court decides whether to grant a preliminary injunction, it will find facts respecting jurisdiction. That is not yet required. *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice."). Regardless, any alleged lack of standing would not be an appealable issue in an interlocutory posture, *see, e.g.*, *Williams v. Davis*, No. 22-30181, 2023 WL 119452, at *2 (5th Cir. Jan. 6, 2023), and would not satisfy the heightened standard for mandamus or emergency relief.

Petitioners also say the district court did not apply the required factors for issuing injunctive relief. *See* Mot.2. Again, however, that is demonstrably false—the

---

[3] *Cuomo v. U.S. Nuclear Regulatory Commission*, 772 F.2d 972 (D.C. Cir. 1985), does not mention § 705, let alone whether it allows a court, after concluding that plaintiffs have sufficiently shown standing and likelihood of success on the merits, to temporarily pause a program to allow jurisdictional discovery and full briefing.

district court weighed the relevant factors and concluded that the States satisfied their burden for a temporary pause of the PIP program. *See, e.g.*, ROA.529. Petitioners' failure to engage with that analysis again constitutes forfeiture and defeats mandamus. In all events, even assuming the court erred (which, to be clear, it did not), "a petitioner [still] 'must show not only that the district court erred, but that it clearly and indisputably erred.'" *In re Beazley Ins. Co.*, No. 09-20005, 2009 WL 7361370, at *4 & n.26 (5th Cir. May 4, 2009) (quoting *In re Avantel, S.A.*, 343 F.3d 311, 317 (5th Cir. 2003)). For the reasons already explained, Petitioners cannot do so.

## II. The Remaining Stay Factors Do Not Favor Petitioners.

Because Petitioners' mandamus petition is meritless, the Court should not grant emergency relief. Regardless, Petitioners cannot satisfy the other requirements.

*First*, Petitioners cannot show irreparable injury—much less that the district court clearly abused its discretion by freezing some (not all) of the PIP program for a short time while expedited proceedings occur. As the district court explained, the PIP program only applies to individuals who "have been continuously present in this country without admission or parole for *ten years*." ROA.736 (emphasis added). Yet Petitioners complain about waiting *weeks*. And they caused much of the delay they complain about by filing an ill-considered appeal. After being in the United States illegally for more than a decade, Petitioners cannot show irreparable harm from waiting a short period so courts can determine whether this new program is lawful.

Petitioners, moreover, have no standing to complain about harms to the federal government. *But see* Mot.8-9. Not only does their argument ignore this Court's

affirmance of the district court's denial of intervention (to say nothing of basic principles of party presentation), but it is divorced from reality. The federal government has not been shy about asserting its position in this litigation; indeed, it insisted that it should receive oral argument time in No. 24-40571 despite not being a party to that appeal. *See* No. 24-40571, ECF 108 at 3. Yet it has not challenged the district court's October 4 order and thus presumably is reviewing jurisdictional discovery and preparing its briefing in advance of the scheduled hearing. In evaluating emergency relief, the Court should not ignore that the federal government—an actual party and the creator of the PIP program—does not object to the district court's order.

*Second*, the States will suffer significant harm. As the district court explained, it can be challenging to unwind grants of parole to particular people. ROA.736. To be the sure, the States do not agree that it would be impossible to do so, but it likely would require additional litigation and—critically—time. Yet the States are injured whenever individuals without a right to be within their borders use public benefits even for a short period. *See, e.g., DAPA*, 809 F.3d at 155-62; *accord Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 289 (2008) (even a "a dollar or two" of injury suffices to establish Article III standing). Because the United States enjoys sovereign immunity, moreover, those harms are per se irreparable.

Petitioners' argument (at 10) that the States never requested such relief fails. The States sought a TRO, stay, and a preliminary injunction the day they filed this lawsuit. ROA.96-161. The district court granted an administrative stay, and then a TRO and stay under §705, to prevent the very irreparable harm that the States identified in their pleadings. The district court entered a TRO and temporary stay on

October 4 without additional briefing from the parties because it recognized, correctly, that a temporary freeze is necessary to prevent the States from suffering the harm that prompted this lawsuit and that was the reason for the district court's prior TROs and stays. *See* Pet. Ex. 4 at 3.

And *third*, the public interest does not support emergency relief. The public has no interest in enforcement of an unlawful program, *see, e.g.*, *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 102 (D.C. Cir. 2021) (citation omitted), and "our system does not permit agencies to act unlawfully even in pursuit of desirable ends," *Ala. Ass'n of Realtors v. Dep't of Health & Human Servs.*, 594 U.S. 758, 766 (2021). That is because national policy "is the responsibility of those chosen by the people through democratic processes." *NFIB v. Dep't of Lab.,* 595 U.S. 109, 120 (2022) (per curiam). Here, moreover, the district court has not entered a preliminary injunction—it just issued a TRO and short-term stay. A court's power to enter such temporary orders is essential to the responsible use of the judicial power, which plainly benefits everyone. At the same time, the public suffers where, as here, non-parties attempt to evade appellate decisions affirming denials of intervention.

Given that law and equity overwhelmingly support the district court's order, the Court should deny this emergency motion. If the Court were to issue an administrative stay, however, it should stay the entire PIP program while it considers Petitioners' mandamus petition—just as it did with respect to Petitioners' intervention appeal. *See* No. 24-40571, ECF 68. The status quo is that the PIP program is not in effect. The Court should not allow Petitioners to use an administrative stay to change that status quo, especially because the States have consistently sought injunctive

relief to prevent irreparable harm and the district court found that there is a "substantial" case for injunctive relief. ROA.529.

### Conclusion

The Court should deny the emergency motion.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

/s/ Aaron L. Nielson
Aaron L. Nielson
Solicitor General
Aaron.Nielson@oag.texas.gov

William F. Cole
Deputy Solicitor General

Counsel for the State Respondents

## CERTIFICATE OF SERVICE

On October 14, 2024, this response was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Aaron L. Nielson
AARON L. NIELSON

## CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,159 words, excluding the parts of the motion exempted by rule; and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Aaron L. Nielson
AARON L. NIELSON