No. 24-40671

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

IN RE OSCAR SILVA PEREZ, NATALIE TAYLOR, COALITION FOR HUMANE IMMIGRANT RIGHTS, JUSTIN DOE, SALVADOR DOE, CINDY MADUENA, JESSIKA OCAMPO HERNANDEZ, RICARDO OCAMPO HERNANDEZ, GENARO PALOMINO, FODAY TURAY, JAXHIEL TURAY, AND CARMEN ZAYAS

_____

Original Proceeding from the United States District Court
for the Eastern District of Texas, Tyler Division
Case No. 6:24-cv-0306

_____

## PETITIONERS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION FOR STAY OF DISTRICT COURT'S "ADMINISTRATIVE STAY"

_____

*Esther H. Sung, Karen C. Tumlin, Hillary Li, Laura Flores-Perilla, Brandon Galli-Graves*
*Justice Action Center*
*P.O. Box 27280*
*Los Angeles, CA 90027*
*(323) 450-7272*

*Paige Austin, Harold A. Solis*
*Make the Road New York*
*301 Grove St.*
*Brooklyn, NY 11237*
*(718) 418-7690*

*Counsel for Petitioners*

**INTRODUCTION**

The district court's unprecedented, *sua sponte*, universal injunction of the KFT parole process on behalf of Texas—without even *considering* its own jurisdiction or the merits of Texas's claims—continues to undermine the public's confidence in the ability of the federal courts to apply the normal rules of civil litigation in hot-button social issues. As the Supreme Court recently reiterated, respecting the rules and the limits imposed by Article III is *more* important—not less—in cases like this. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 396-97 (2024). And lest there be any doubt, the weakness of Texas's Opposition (Dkt. 37 ("Opp'n")) to Petitioners' Emergency Motion for Stay of District Court's "Administrative Stay" (Dkt. 13 ("Motion")) highlights just how very far the present situation is from the ordinary course.

Petitioners respectfully request that this Court put an end to the present anomaly—and Texas's unearned injunction—by granting their Motion.

1. Texas's only substantive defense of the district court's "administrative stay" is to argue, for the first time, that the district

court's thirty-five-day "administrative stay" is actually a temporary restraining order (TRO) under Rule 65; what Texas calls a "stay" under 5 U.S.C. § 705; and somehow *also* a mere "discretionary exercise of its [inherent] case management authority." Opp'n at 13-14. Texas's shape-shifting attempt to backfill the authority for the district court's "administrative stays" only underscores the impropriety of what the district court actually did.

To begin, the district court was explicit that its "administrative stays" have been issued pursuant to the All Writs Act or its inherent authority, and *not* Rule 65 or § 705. Pet. Ex. 1 at 2. To be sure, the district court has *referenced* its hypothetical authority under each, *see* Opp'n at 12 (citing ROA.529), but it has made clear that its actual *exercise* of authority is based on the All Writs Act. *See* Pet. Ex. 2 at 2.

There are good reasons to take the district court at its word that its orders were issued outside the established procedures. For one, if its order really is a TRO, as Texas argues, then it is a plainly unlawful one: TROs cannot exceed a fourteen-day period and can be renewed only once for an additional fourteen days. Yet by its terms, the district court's most recent "administrative stay" alone will last more than thirty-five days,

2

ending on Election Day, never mind the nearly forty days that preceded it. Pet. Ex. 4 at 3. Furthermore, the district court explicitly discussed this temporal limit on TROs—and said it did not apply—in issuing its first such "administrative stay" in August. *See* Pet. Ex. 1 at 2-3 ("Rule 65(b) does not apply"); *see also* Pet. Ex. 4 (incorporating prior orders as basis for "reimpos[ing]" latest stay).

What is more, just two weeks ago, Texas itself told this Court that the district court was *not* acting under Rule 65. *See* No. 24-40571, Dkt. 103 at 13 (arguing the district court did not have to "adher[e] to . . . Rule 65" or "requir[e] a showing that the four traditional factors for issuing preliminary injunctions have been met" because it was not acting under that authority in issuing a "stay"). That argument could be fairly characterized as a theme of Texas's opposition. *Id.* at 15 ("Once again, this Court's order is a stay, not an injunction, and it was not entered under Federal Rule of Civil Procedure 65.").

More importantly, both TROs and orders under § 705 require application of the *Winter* factors, and the district court was clear that it was applying a lower, laxer "first blush judgment" standard instead, explicitly *declining* to make any conclusions about the *Winter* factors.

Pet. Ex. 1 at 2-3 (traditional stay factors "do not control"). Indeed, the crux of the issue is that the district court plainly—but erroneously—believed that the All Writs Act and/or its inherent authority gives it the power to enjoin the federal government on a universal basis and for months on end without requiring the plaintiff to carry its burden as to any issue at all.[1] This grave misconception about the inherent authority of federal courts is the fundamental legal error that must be corrected.

2. Texas's arguments about Petitioners' likelihood of success are similarly delusory. Texas dedicates pages to arguing that, as non-parties, Petitioners do not have the right to appeal and so lack "standing." Opp'n at 13-16. It is a strange argument given that Petitioners did not, in fact, appeal the district court's order. *See* Pet. at 13; Mot. at 11.

What Texas seems to mean (and in fact argues throughout in slightly different language) is that because Petitioners have so far been denied intervention, their mandamus petition is somehow an attempt to

---

[1] Like Texas, *see* Opp'n at 8, 11, Petitioners incorporate their prior briefing on how the district court's "administrative stays" are also not authorized by the All Writs Act nor the district court's inherent authority. 24-40571, ECF No. 91 at 17-18.

"evade" the results of the prior appeal. This argument is illogical. Petitioners' attempts to participate as intervenors have no bearing on Petitioners' entitlement to mandamus or their emergency stay motion. Petitioners do not seek to relitigate any issue decided in that appeal, and there is no overlap in the legal issue decided there or even the applicable law.

Even more to the point, the fact that Petitioners pursued intervention makes their mandamus petition *more* appropriate, not less. The first criterion of a mandamus petition is that there is "no other adequate means to attain the relief [a petitioner] desires." *In re Rolls Royce Corp.*, 775 F.3d 671, 675 (5th Cir. 2014) (citation omitted). Petitioners' unsuccessful attempt to intervene makes clear this criterion is met. *See id.*

Finally, Texas asserts that Petitioners' alleged failure to request emergency relief from the panel that considered its earlier intervention appeal "speaks volumes," Opp'n at 1, but what really shouts is Texas's selective amnesia. Not only *did* Petitioners seek that relief from the prior panel, but just a few hours after Petitioners filed a reply on their motion to vacate that panel's extension of the district court's "administrative

5

stay," the panel *vacated its extension of the stay*.[2] Dkt 111-1 at 2 ("This Court's stay order of September 11, 2024, is VACATED.").

3. Texas posits that Petitioners have other means to attain relief "because the federal government represents their interests." Opp'n at 16. This argument is divorced from reality. As established above, Petitioners have standing to bring this mandamus action separate from the existing challenge to KFT, and Petitioners' nonparty status is no bar to mandamus relief. *See* Pet. at 24 n.3. Petitioners are not required to wait idly for the district court proceedings to run their course, as those proceedings will not reach the unlawful conduct at issue here, or for the federal government to potentially file an interlocutory appeal. That the federal government is also defending KFT in Texas's lawsuit does not prevent Petitioners from seeking relief from a court order that is causing them irreparable injury with each additional day it is in place, and the cases that Texas cites in opposition are irrelevant, as they apply to the

---

[2] Texas claims—for the first time and with no support, legally or factually—that its "understanding" is that this Court's September 11 stay order "remains in place" until the mandate issues. Opp'n at 7 n.2. This assumption is not only illogical; it is directly contradicted by the reignited proceedings in the district court.

right to appeal. Opp'n at 14. *But see Castillo v. Cameron Cty.,* 238 F.3d 339, 349 n.16 (5th Cir. 2001); *In re McBryde,* 117 F.3d 208, 223 (5th Cir. 1997). The federal government does not represent—or limit the standing of—Petitioners in this case any more than it represents any other nonparty to the district court lawsuit. Moreover, as Texas itself emphasizes repeatedly, the federal government has not sought emergency relief as Petitioners have here. This only further supports Petitioners' mandamus petition, as this action is plainly Petitioners' only means to prevent continued harm.

4.　　Texas makes three cursory arguments about the balance of the equities, and consideration of each underscores that the balance of equities tips sharply in Petitioners' favor.

First, Texas's argument that the district court's injunction does not inflict irreparable harm because the thousands of families it would benefit have already been waiting a long time has no basis in law or logic. *See* Opp'n at 16. Irreparable harm is irreparable even if it has been inflicted for a long time or has only recently been caused by the court order under review; duration does not change the nature of the injury. Additionally, Texas does not actually contest that the district court's

7

injunction inflicts harm on third parties or that the harm inflicted cannot be remedied by money damage (i.e., is irreparable). Moreover, Texas's argument that courts can enjoin first and *then* "determine whether this new program is lawful," *id.*, is contrary to our constitutional design and the courts' role in it. *See All. for Hippocratic Med.*, 602 U.S. at 380.

Texas's argument that it will "suffer significant harm" if the district court's injunction is stayed, Opp'n at 17, is plainly wrong and, if anything, further undermines the district court's actions. In its Opposition, Texas explicitly *disclaims* the only basis for possible irreparable harm to it that the district court has provided, *see id.*—the "irreversibility" of parole, *see* Mot. at 2-4. As Petitioners noted, the district judge himself supplied that justification, apparently rejecting the arguments for irreparable injury that Texas made for itself. *See id.* at 3-4 n.4 and accompanying text.[3] Thus, there is now no argument before this Court for how the KFT parole

---

[3] Texas twice accuses Petitioners of "impugn[ing] the integrity of [the] district judge," Opp'n at 2, 9, by noting the clear parallel between the district court's *sua sponte* "irreversibility" concern (that Texas has now disclaimed) and Texas's deferred action litigation. Mot. at 3 n.4. Texas does not dispute the accuracy of that factual recitation or explain how reciting seemingly uncontested facts "impugns the integrity" of the district judge, and it plainly does not.

process could irreparably harm Texas that the district court (or any other court) has accepted.

Finally, Texas's arguments concerning the "public interest," Opp'n at 18, are just repetitions of (and collapse into) its untested claim about the legality of the KFT parole process. *See id.* ("The public has no interest in enforcement of an unlawful program"). And if the district court's authority "to order such temporary orders" as has been done here were really as "essential to the responsible use of the judicial power" as Texas claims, *id.*, it could surely cite a single example of a district court issuing a similar order in remotely comparable circumstances. But neither the district court nor Texas has identified even one such example. Nor is there a good reason to forge this new path in the circumstances present here, where it prevents some longtime immigrant residents married to U.S. citizens from getting closer to obtaining the green card for which Congress has made them eligible.

5. Texas's last effort in alleging that Petitioners' writ is inappropriate is that seeking mandamus relief would allegedly "further thwart the district court's attempts to expedite this litigation." Opp'n at 16. Not true. Petitioners do not seek any relief relating to the ongoing

9

district court proceedings. More generally, throughout this litigation, Petitioners have never requested or desired to delay those proceedings. Short of completely (and unjustly) sacrificing their legal rights—and contrary to how Texas paints the facts—Petitioners have gone above and beyond to ensure that they are *not* the cause of delay. Regardless, Petitioners' motion seeks only a stay of the district court's "administrative stay," which poses no impediment to the district court proceeding in the ordinary course.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that this Court grant their motion and return this litigation to the ordinary course of litigation that applies regardless of the identity of the litigants or the subject of the litigation.

Dated: October 14, 2024                 Respectfully submitted,

 

                                                     */s/ Esther H. Sung*
                                                     Esther H. Sung
                                                     Karen C. Tumlin
                                                     Hillary Li
                                                     Laura Flores-Perilla

        Brandon Galli-Graves
        JUSTICE ACTION CENTER
        P.O. Box 27280
        Los Angeles, CA 90027
        Telephone: (323) 450-7272
        Facsimile: (323) 450-7276

        Paige Austin
        Harold A. Solis
        MAKE THE ROAD NEW YORK
        301 Grove Street
        Brooklyn, NY 11237
        Telephone: (718) 418-7690
        Facsimile: (866) 420-9169

        *Counsel for Movants-Petitioners*

## CERTIFICATE OF SERVICE

    I, Esther H. Sung, hereby certify that on October 14, 2024, I caused the foregoing to be electronically filed with the clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit via the CM/ECF system, which will send a notice of this filing to counsel for the parties.

<u>*/s/ Esther H. Sung*</u>
Esther H. Sung
Justice Action Center
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272

*Counsel for Movants-Petitioners*

# CERTIFICATE OF COMPLIANCE
## WITH LENGTH LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I hereby certify the following:

1. The foregoing brief complies with the length limitations of Rule 27(d)(2)(C). The brief contains 2,016 words according to the Microsoft Word word-counting function, excluding the exempt provisions.

2. The foregoing brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times Century Schoolbook type style.

Dated: October 14, 2024

*/s/ Esther H. Sung*
Esther H. Sung
Justice Action Center
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272

*Counsel for Movants-Appellants*