No. 24-40671

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

———————————

IN RE OSCAR SILVA PEREZ, NATALIE TAYLOR, COALITION FOR HUMANE IMMIGRANT RIGHTS, JUSTIN DOE, SALVADOR DOE, CINDY MADUENA, JESSIKA OCAMPO HERNANDEZ, RICARDO OCAMPO HERNANDEZ, GENARO PALOMINO, FODAY TURAY, JAXHIEL TURAY, AND CARMEN ZAYAS

Petitioners.

———————————

## FEDERAL GOVERNMENT'S RESPONSE TO PETITIONERS' EMERGENCY MOTION FOR STAY OF DISTRICT COURT'S ORDER

———————————

EREZ REUVENI
*Senior Counsel*

KATIE J. SHINNERS
BRIAN WARD
*Senior Litigation Counsel*

JOSEPH A. DARROW
ELISSA FUDIM
ERIN RYAN
*Trial Attorneys*
*Office of Immigration Litigation*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

GERARD SINZDAK
SEAN R. JANDA
*Attorneys, Appellate Staff*
*Civil Division, Room 7260*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3388*

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS.................................................................................i

INTRODUCTION AND SUMMARY .............................................................1

STATEMENT ...........................................................................................2

ARGUMENT ............................................................................................9

    A.    Petitioners Are Unlikely to Succeed on Their Mandamus Petition ..........9

    B.    The District Court's Order Is Improper .....................................13

CONCLUSION ....................................................................................... 18

CERTIFICATE OF COMPLIANCE

## INTRODUCTION AND SUMMARY

The district court order at issue in these proceedings is unlawful, but Petitioners' request for an emergency stay pending this Court's resolution of their procedurally improper mandamus petition should be denied. The mandamus petition asks this Court to vacate a district court order—the third such order entered by the district court—that enjoins the federal government, through November 8, 2024, from granting parole through the process outlined in the Federal Register notice *Implementation of Keeping Families Together*, 89 Fed. Reg. 67,459, 67,459-62 (Aug. 20, 2024). As a result of the court's orders, the federal government has now been enjoined from fully implementing the notice for almost two months and will remain enjoined for another three weeks, without any court having found that plaintiffs have standing in this case or that the traditional equitable factors support an injunction.

While petitioners are justifiably critical of the district court's actions, they are unlikely to succeed on their mandamus petition because they are not parties to this litigation and, accordingly, lack the right to seek mandamus relief from the district court's order enjoining the federal government. Nonparties may seek mandamus relief only in very narrow circumstances not present here. Petitioners themselves have not been enjoined, and the district court's order does not harm them in a manner that could not be remedied through other available means. Even if the requirements for mandamus were met, moreover, this Court would properly exercise its discretion to deny petitioners' attempt to control the litigation of the underlying case as nonparties.

The federal government has decided to defend the lawfulness of the notice through the expedited merits schedule entered by the district court rather than by seeking emergency relief from this Court, and nonparties like petitioners cannot properly circumvent that considered judgment.

If this Court nonetheless reaches the merits of petitioners' request, it should conclude that the district court's order is unlawful. For nearly two months, the Executive Branch has been subject to a series of injunctions entered by the district court—and, at one point, extended by this Court—prohibiting the full implementation of the notice. The district court has provided plaintiffs with that injunctive relief without having determined that plaintiffs are likely to prevail on the merits, without having found that plaintiffs have established irreparable harm, and without balancing the equities. This unprecedented use of a federal court's equitable powers is at odds with fundamental principles governing equitable relief and is unsustainable on the merits.

## STATEMENT

**1.** The Immigration and Nationality Act (INA) authorizes the Secretary of Homeland Security, "in his discretion," to grant "parole" to "any" applicant for admission "temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). A noncitizen who is granted parole is permitted to physically enter or remain in the United States temporarily, but parole is not an admission to the United

States. Congress has provided that a noncitizen who has been paroled and who meets other requirements may apply to adjust his status to that of a lawful permanent resident (LPR). *See id.* § 1255(a). As discretionary determinations, parole decisions are generally not subject to judicial review. *See id.* § 1252(a)(2)(B)(ii).

The INA has long been understood to permit the granting of parole not only to noncitizens who are physically at the border but also to those who are physically present within the United States but who have not been admitted. *See, e.g.*, INS Gen. Counsel, *Authority to Parole Applicants for Admission Who Are Not Also Arriving Aliens*, Legal Op. No. 98-10, 1998 WL 1806685 (Aug. 21, 1998). This conclusion follows the INA's text: the INA allows the parole of "any alien applying for admission," 8 U.S.C. § 1182(d)(5)(A), and the statute deems all noncitizens "present in the United States who ha[ve] not been admitted" to be "applicant[s] for admission," *id.* § 1225(a)(1). The grant of parole to such physically present noncitizens is often referred to as "parole in place." Congress has recognized and affirmed the agency's "parole in place authority." *See, e.g.*, *id.* § 1182 note.

While parole in place is one mechanism through which a noncitizen who has not been admitted to the United States can (if otherwise eligible) pursue LPR status, it is not the only means Congress provided. Noncitizens who entered the country without admission or parole can alternatively leave the country; apply for an immigrant visa abroad; and, if the visa is granted, apply for admission as an LPR. *See* 89 Fed. Reg. at 67,460.

Against this backdrop, the Department of Homeland Security issued a notice regarding a process through which certain noncitizen spouses and stepchildren of U.S. citizens may apply for parole in place. *See* 89 Fed. Reg. 67,459. In the main, the notice does two things. First, it announces that the Department has established a process through which certain noncitizens may submit a request for parole in place. In general, to be eligible for that process, a noncitizen must have the requisite family relationship, must have been continuously present in the United States since June 17, 2014 (for spouses) or June 17, 2024 (for stepchildren), and must not have any disqualifying criminal history. *See id.* at 67,460-61. Second, the notice memorializes the Secretary's determination that paroling, on a case-by-case basis, noncitizens who meet those criteria and who "merit a favorable exercise of discretion" will "generally provide a significant public benefit to the United States." *Id.* at 67,465; *cf.* 8 C.F.R. § 212.5(b) (reflecting similar determinations for certain groups of noncitizens in immigration detention, such as pregnant women and minors).

The notice does not alter the underlying statutory standards governing parole or guarantee a grant of parole for those who meet the process's eligibility criteria. Any noncitizen who may submit a request through the process outlined in the notice would have already been able to request parole in place from the Secretary—as may any noncitizen who is present in the country and an applicant for admission. And in adjudicating any request submitted through the process, the Department "will determine" on a case-by-case basis, consistent with the INA, whether "a grant of

4

parole in place is warranted based on significant public benefit or urgent humanitarian reasons" and whether "the requestor merits a favorable exercise of discretion." 89 Fed. Reg. at 67,465.

**2.** The State of Texas and 15 other States challenged the notice. *See* Compl. 3-4, *State of Texas v. DHS*, No. 6:24-cv-306, ECF No. 1 (E.D. Tex. Aug. 23, 2024). They primarily claim that the notice is contrary to the INA and was issued in violation of the Administrative Procedure Act. *See id.* at 37-51. Plaintiffs filed their complaint on August 23, 2024; the same day, they moved for preliminary relief against the notice. *See* Motion for Temporary Restraining Order, Preliminary Injunction, and Stay of Agency Action, *State of Texas v. DHS*, No. 6:24-cv-306, ECF No. 3 (E.D. Tex. Aug. 23, 2024).

Three days later, before the government had provided any substantive response, the district court entered what it called an "administrative stay" of the granting of parole under the notice. Pet. Ex. 1, at 1. In entering that relief, the court did not conclude that plaintiffs were likely to succeed on the merits of any claim; that they had demonstrated they would suffer irreparable harm in the absence of relief; or that the public interest and balance of the equities conclusively supported relief, much less universal relief to non-parties. Instead, the court concluded only that plaintiffs' "claims are substantial and warrant closer consideration than the court has been able to afford to date" and that immediate relief was necessary to "preserv[e] the court's ability to grant full relief to plaintiffs" if they should ultimately prevail. *Id.* at 3-5. The

court determined that it would "initially limit this stay to 14 days" but that it could be extended for 14 additional days for good cause or longer if the parties consented. *Id.* at 5.

On September 3, the federal government filed a motion to lift the stay and an opposition to further injunctive relief. The next day, the district court extended its relief—which it now characterized as a "temporary restraining order and stay"—for an additional 14 days, through September 23. Pet. Ex. 2, at 6-7. In doing so, the court again did not conclude that plaintiffs were likely to succeed on the merits of their claims or that the plaintiffs had established that they would be irreparably harmed. Instead, the court concluded only that "plaintiffs' claims are serious and substantial enough" to justify temporary relief "until an expedited hearing on the motion for a preliminary injunction." *Id.* at 4. And the court entered an expedited schedule for both preliminary and permanent relief that culminated in an "omnibus" hearing "and, if necessary, bench trial" on September 18. *Id.* at 5-7.

**3.** Meanwhile, 11 individuals and one organization moved to intervene as defendants. *See* Motion to Intervene as Defendants, *State of Texas v. DHS*, No. 6:24-cv-306, ECF No. 15 (E.D. Tex. Aug. 26, 2024). The district court denied that motion, concluding that the federal government adequately represented proposed intervenors' interest in maintaining the notice. *See State of Texas v. DHS*, No. 6:24-cv-306, 2024 WL 4039580 (E.D. Tex. Sept. 3, 2024).

6

The proposed intervenors appealed from the denial of their motion to intervene. On September 11, this Court set oral argument in that expedited appeal. Order, *State of Texas v. DHS*, No. 24-40571 (5th Cir. Sept. 11, 2024). Although no party had sought this relief, the Court entered an "administrative stay" of proceedings in the district court "pending a decision on the merits [of the intervention appeal] or other order of this court." *Id.* In addition, the Court sua sponte ordered that the "stay issued by the district court"—which had previously been set to expire on September 23—"will remain in effect pending further order of this court." *Id.* This Court did not determine that plaintiffs had established standing or were likely to succeed on the merits of their claims or that the traditional equitable factors supported relief.

The federal government and the then-proposed intervenors both moved to vacate this Court's extension of the district court's relief. On October 4, this Court entered an unpublished opinion affirming the district court's denial of intervention. In addition, the Court vacated its own "stay order of September 11, 2024." *State of Texas v. DHS*, No. 24-40571 (5th Cir. Oct. 4, 2024) (per curiam).[1]

---

[1] The State respondents are incorrect to argue (at 7 n.2) that this Court's previously entered stay remains in effect pending the issuance of the mandate in the intervention appeal. The function of the mandate is simply to return jurisdiction to the district court; thus, when this Court vacates or reverses a district court's judgment, "the original district court judgment remains in effect" until the mandate issues. *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 468 (5th Cir. 2013) (quotation and alteration omitted). But this Court is free to alter or rescind its own orders at any time. The issuance of this Court's mandate to the district court is irrelevant to this Court's exercise of that authority. Thus, this Court's lifting of the stay it entered was effective

*Continued on next page.*

**4.** Hours after this Court vacated its extension of the district court's relief, the district court—without any request from a party—entered a new "temporary stay and restraining order" against the notice. Pet. Ex. 4, at 3. The court stated that it was entering the order "[f]or the reasons given in the court's prior orders." *Id.* The court also set a new summary judgment and trial schedule, which is scheduled to culminate in a "consolidated hearing" and "if necessary bench trial" on November 5. *See id.* The new injunction runs through November 8, 2024, *see id.*, at which point the government will have been enjoined from fully implementing the notice under a series of "stays" for 74 days.

Petitioners—the same 11 individuals and one organization who were previously denied intervention—have now filed, as a new original action in this Court, a mandamus petition, in which they seek an order vacating the district court's order and directing the district court "not to re-impose such injunctive relief without entertaining briefing and, if the court deems it necessary, oral argument from the parties, and issuing an appealable order." Pet. 37. Petitioners have also filed an emergency motion for a stay of the district court's order enjoining implementation of the notice. Petitioners have not sought further review of this Court's order affirming

---

immediately. Moreover, the district court's provision of relief expired on its own terms on September 23, and no remaining district court order had enjoined the notice as of October 4.

the district court's denial of their motion to intervene and thus remain nonparties to the case.

## ARGUMENT

To obtain a stay pending disposition of the mandamus petition, petitioners must demonstrate, among other things, "a strong showing that [they are] likely to succeed on the merits" of their petition. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Petitioners cannot make that showing because, as nonparties, they lack the right to seek mandamus relief under the circumstances presented here. But if this Court were to consider petitioners' request on the merits, it should conclude that the district court's de facto injunction was impermissible.

### A.    Petitioners Are Unlikely to Succeed on Their Mandamus Petition

This Court's authority to issue a writ of mandamus stems from the All Writs Act, which confers authority on the Court to "issue all writs necessary or appropriate in aid of" its "jurisdiction[] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). To obtain a writ of mandamus, a petitioner must demonstrate: (1) that it has "no other adequate means to attain the relief" it desires; (2) that its "right to issuance of the writ is clear and indisputable"; and (3) that "the writ is appropriate under the circumstances." *Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367, 380-81 (2004) (quotations omitted).

**1.** Petitioners, as nonparties, are not likely to succeed on the merits of their mandamus petition and also lack a "right to issuance of the writ [that] is clear and indisputable." *Cheney*, 542 U.S. at 380-81 (quotation omitted) As an initial point, petitioners cannot demonstrate that they do not have other avenues available to obtain relief from the district court's order. Most obviously, a nonparty who wishes to attack a district court's order may properly seek to intervene in the litigation for purposes of appealing that order. And, in fact, petitioners here pursued that avenue; the district court and this Court simply concluded that they had not met the requirements for intervention. Petitioners could have sought further review of the denial of their motion to intervene, but to date they have not done so. The fact that petitioners' attempt to intervene has so far been unsuccessful cannot support the conclusion that intervention is generally an inadequate alternative in these circumstances. Indeed, a rule allowing nonparties who have been denied the right to intervene to seek mandamus relief from district court orders they dislike would render intervention largely superfluous. Petitioners cite no support for their contrary theory that they may properly turn to mandamus after they have unsuccessfully pursued the established procedures that a nonparty claiming a stake in litigation must follow.

Petitioners discuss their nonparty status in a footnote in their mandamus petition (at Pet. 14 n.3), in which they cite two cases for the general proposition that nonparties may sometimes seek mandamus relief. But neither of those cases supports petitioners' claim for relief. In one, a district court judge petitioned for mandamus to

vacate a different district court judge's order transferring cases away from the first judge. *In re McBryde*, 117 F.3d at 223-24. There, the judge had no alternative avenue to challenge that transfer order. *Id.* Petitioners' other case did not involve a mandamus petition at all but involved an appeal by the State of Texas from an injunction requiring a county within the State to take certain actions to reduce its jail population. *Castillo v. Cameron Cty., Tex.*, 238 F.3d 339, 345 (5th Cir. 2001). In concluding that the State had standing to appeal even as a nonparty, this Court quoted in passing—in a parenthetical in a footnote—a Tenth Circuit decision stating that "nonparty status" "need not bar a petition for mandamus review." *Id.* at 349 n.16. But nothing about that decision considers or describes the conditions under which a nonparty may properly petition for mandamus.

In some limited and narrow circumstances, a nonparty may seek mandamus relief from a district court order, but those circumstances are not present here. Where, for example, a district court enjoins the nonparty or issues an order that allegedly violates the nonparty's constitutional rights directly, a nonparty may be able to obtain mandamus relief. *See, e.g., Journal Publ'g Co. v. Mechem*, 801 F.2d 1233 (10th Cir. 1986) (nonparty media organization could challenge district court order prohibiting post-trial press interviews with jurors because the order violated the nonparty's constitutional rights and the nonparty had no alternative means to seek review). But petitioners have not themselves been enjoined, and they cannot show that the order

directly violates their constitutional or other rights in a manner that could not otherwise be remedied.

**2.** Even if the first two mandamus requirements were met, petitioners would be unlikely to succeed on their mandamus petition for the further reason that issuance of the writ would not be appropriate given the substantial practical and equitable concerns that would be implicated if nonparties were permitted to overtake the parties' litigation decisions. A writ of mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney*, 542 U.S. at 380 (quotations omitted). For that reason, even when the other requirements are satisfied, a court may properly "exercise [its] discretion not to issue" the writ if relevant circumstances do not support the exercise of that extraordinary authority. *In re Gee*, 941 F.3d 153, 170 (5th Cir. 2019). That is the case here.

Permitting petitioners to obtain mandamus in this case would undermine the authority that Congress has placed in the Executive Branch to conduct litigation on behalf of the federal government. Although the government agrees with petitioners that the district court's entry of relief was unlawful, *see infra* pp. 13-17, the government has made the considered determination not to seek relief from this Court at this time. Instead, rather than risk delaying even further the determination of plaintiffs' standing and resolution of their claims, the government intends to defend the lawfulness of the challenged action through the expedited merits schedule entered by the district court.

12

It would be inappropriate to permit petitioners to seek mandamus and thereby circumvent the Executive Branch's considered decision. By statute, the "Solicitor General" and other "officer[s] of the Department of Justice" such as the Attorney General may direct have responsibility for "attend[ing] to the interests of the United States" in the courts. 28 U.S.C. § 517. In the case of the Solicitor General, those responsibilities have long included "[d]etermining whether, and to what extent, appeals will be taken by the Government to" the courts of appeals and whether to seek extraordinary relief from the courts of appeals. 28 C.F.R. § 0.20(b).

As the Supreme Court has explained, vesting this authority in the Attorney General and Solicitor General "represents a policy choice by Congress." *FEC v. NRA Political Victory Fund*, 513 U.S. 88, 96 (1994). The Solicitor General has a "broad[] view of litigation in which the Government is involved throughout the state and federal court systems" and is therefore better positioned to evaluate the overall costs and benefits of pursuing a particular appeal than are others with more "parochial view[s]" of a given case. *Id.* There is no basis to permit petitioners to seek mandamus and peremptorily usurp this authority.

## B.    The District Court's Order Is Improper

If this Court were to consider whether the district court's de facto injunction is permissible, the Court should conclude that the district court exceeded the bounds of its authority by enjoining the notice—now for up to 74 days—without concluding that the traditional factors governing equitable relief are satisfied.

"A preliminary injunction is an extraordinary remedy" that "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22, 24 (2008). To make that showing, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20; *see also Nken*, 556 U.S. at 434 (explaining that there is "substantial overlap" between those factors and the factors required for a stay).

The district court initially entered temporary equitable relief preventing the federal government from granting requests for parole submitted under the notice on August 26, 2024. The government has thus been prevented from fully implementing the notice for close to two months, and it faces the prospect of equitable relief that now continues for weeks more. And yet, to date, no court has determined that any plaintiff likely has standing to sue or is likely to succeed on the merits of any claim against the notice. Nor has any court concluded that any plaintiff has established that it will be irreparably harmed in the absence of preliminary relief.

As explained, *see supra* pp. 5-6, the district court initially justified its refusal to apply the traditional four-factor test on the ground that it was granting only temporary relief. Even if the court had been correct that temporary relief permits a lower showing, *but see Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022) ("[T]he standard for analyzing a motion for a temporary restraining order is the same as a

14

motion for a preliminary injunction[.]"); *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987), that justification has long since expired, and the district court could not properly enter its third round of relief without concluding that *Winter*'s factors are met. By rule, a temporary restraining order may not remain in effect for longer than 28 days without the parties' consent, *see* Fed. R. Civ. P. 65(b)(2), and any "temporary restraining order continued beyond the time permissible under Rule 65 must be treated as a preliminary injunction, and must conform to the standards applicable to preliminary injunctions," *Sampson v. Murray*, 415 U.S. 61, 86 (1974). Similarly, this Court has directed that courts may not properly use the All Writs Act to circumvent consideration of the "reasoned application of the four factors held to be necessary prerequisites before a preliminary injunction may be obtained." *Florida Med. Ass'n v. U.S. Dep't of Health, Education, & Welfare*, 601 F.2d 199, 202 (1979) (5th Cir. 1979).

The district court's repeated entry of relief flouts these principles. The court has, in effect, granted plaintiffs a preliminary injunction. Yet the court has repeatedly failed to conduct the required analysis and make the necessary findings to support such relief. The court has never even considered the factors governing the issuance of equitable relief, much less concluded that plaintiffs are likely to establish standing or succeed on the merits of their claims or that they would suffer irreparable harm if the government continued implementing the notice. Making matters worse, the court's latest order—like its earlier order—was entered without a request for such relief from any party, without any notice, and without briefing from any party regarding the

15

propriety of such relief. *Cf.* Fed. R. Civ. P. 65(a) ("The court may issue a preliminary

injunction only on notice to the adverse party.").

The district court was also wrong to suggest that it could enter relief without

considering these traditional factors because it was entering an "administrative stay"

rather than a preliminary injunction. For one, the district court's relief does not

function as a proper "stay" at all. The difference between a stay and an injunction is

clear: an injunction "is a means by which a court tells someone what to do or not to

do" while a stay "operates upon the judicial proceeding itself" by "halting or

postponing some portion of the proceeding, or by temporarily divesting an order of

enforceability." *Nken*, 556 U.S. at 428. But the relief entered by the district court

functions like an injunction, not like a stay (much less an administrative stay). The

relief does not simply "halt" or "postpone" proceedings or "temporarily divest" some

order of enforceability. Instead, the relief prohibits the Executive Branch from

approving certain parole applications. It tells the Executive Branch what it may not

do. That "intrusion by a federal court into the workings of a coordinate branch of the

Government," *INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305-06 (1993)

(O'Connor, J., in chambers), goes far beyond simply managing the court's own

docket.

Moreover, even where an administrative stay is appropriate, it may only "be a

short-lived prelude" to a future ruling on a substantive motion; it thus may "last no

longer than necessary to make an intelligent decision" on some underlying motion for

16

equitable relief in light of a court's "obligation to apply" the traditional factors to such a motion. *United States v. Texas*, 144 S. Ct. 797, 799-800 (2024) (Barrett, J., concurring). As explained, the district court's relief fails to adhere to this temporal limitation. Plaintiffs filed their motion for a TRO and preliminary injunction on August 23, 2024, and the United States filed a 55-page response to that motion on September 3, 2024. The district court has thus had ample time to make a decision on the propriety of injunctive relief yet has failed to do so.

That intrusion is particularly unwarranted in this case, because Congress has explicitly vested the Secretary with the discretionary authority—generally insulated from judicial review—to grant parole. 8 U.S.C. § 1182(d)(5)(A). That grant of authority accords generally with Congress' recognition that Executive officials—not Article III courts—must have "broad discretion" to manage the immigration system and to balance the many and varied competing goals of the immigration laws. *Arizona v. United States*, 567 U.S. 387, 395-96 (2012). The district court has cited no support for the extraordinary proposition that it may properly intrude into this discretionary sphere without even considering the traditional limits on courts' equitable authority.

17

## CONCLUSION

For the foregoing reasons, the Court should deny petitioners' emergency

motion.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney*
*General*

EREZ REUVENI
*Senior Counsel*

KATIE J. SHINNERS
BRIAN WARD
*Senior Litigation Counsel*

GERARD SINZDAK

JOSEPH A. DARROW
ELISSA FUDIM
ERIN RYAN
*Trial Attorneys*
*Office of Immigration Litigation*
*Civil Division*
*U.S. Department of Justice*
*P.O. Box 868, Ben Franklin Station*
*Washington, D.C. 20044*

 *s/ Sean R. Janda*
SEAN R. JANDA
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7260*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue NW*
 *Washington, DC 20530*
 *(202) 514-3388*
 *sean.r.janda@usdoj.gov*

October 2024

**CERTIFICATE OF COMPLIANCE**

This response complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2) because it contains 4,433 words according to the court of Microsoft Word. This motion also complies with the requirements of Federal Rule of Appellate Procedure 27(d) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Sean R. Janda*
Sean R. Janda